# UNITED STATES *v.* ADDONIZIO ET AL.

No. 78–156. Argued March 27, 1979—Decided June 4, 1979

*Deputy Solicitor General Easterbrook* argued the cause for the United States. With him on the briefs were *Solicitor General McCree* and *Assistant Attorney General Heymann.*

*Michael Edelson* argued the cause and filed a brief for respondent Addonizio. *Leon J. Greenspan* argued the cause for respondents Whelan and Flaherty. With him on the brief was *Joseph D. DeSalvo.**

MR. JUSTICE STEVENS delivered the opinion of the Court.

Three prisoners have alleged that a postsentencing change in the policies of the United States Parole Commission has prolonged their actual imprisonment beyond the period intended by the sentencing judge. The question presented is whether this type of allegation will support a collateral attack on the original sentence under 28 U. S. C. § 2255.[1] We hold that it will not.

---

*Kenneth N. Flaxman* filed a brief for the Lewisburg Prison Project as *amicus curiae* urging affirmance.

[1] Title 28 U. S. C. § 2255 provides:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or

I

With respect to the legal issue presented, the claims before us are identical. To bring this issue into sharp focus, we accept for purposes of decision Addonizio's view of the facts and the relevant aspects of the Parole Commission's practices.

After his conviction in the United States District Court for the District of New Jersey, on September 22, 1970, Addonizio was sentenced to 10 years' imprisonment and a fine of $25,000. Factors which led the· District Judge to impose that sentence included the serious character of Addonizio's offenses,[2] and the judge's expectation that exemplary institu-

_____

is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

. . . . .

"If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

[2] At the time he imposed sentence, Judge Barlow stated:

"Weighed against these virtues, [Mr. Addonizio's record of public service] . . . is his conviction by a jury in this court of crimes of monumental proportion, the enormity of which can scarcely be exaggerated and the commission of which create the gravest implications for our form of government.

"Mr. Addonizio, and the other defendants here, have been convicted of one count of conspiring to extort and 63 substantive counts of extorting hundreds of thousands of dollars from persons doing business with the City of Newark. An intricate conspiracy of this magnitude, I suggest to you, Mr. Hellring [defense counsel], could have never succeeded without the then-Mayor Addonizio's approval and participation.

"These were no ordinary criminal acts. . . . These crimes for which Mr. Addonizio and the other defendants have been convicted represent a pattern of continuous, highly-organized, systematic criminal extortion over a period of many years, claiming many victims and touching many more lives.

"Instances of corruption on the part of elected and appointed govern-

tional behavior would lead to Addonizio's release when he became eligible for parole after serving one-third of his sentence.[3] The judge did not contemplate that the Parole Com-

mental officials are certainly not novel to the law, but the corruption disclosed here, it seems to the Court, is compounded by the frightening alliance of criminal elements and public officials, and it is this very kind of totally destructive conspiracy that was conceived, organized and executed by these defendants.

". . . It is impossible to estimate the impact upon—and the cost of—these criminal acts to the decent citizens of Newark, and, indeed, to the citizens of the State of New Jersey, in terms of their frustration, despair and disillusionment.

. . . . .

"Their crimes, in the judgment of this Court, tear at the very heart of our civilized form of government and of our society. The people will not tolerate such conduct at any level of government, and those who use their public office to betray the public trust in this manner can expect from the courts only the gravest consequences.

. . . . .

"It is, accordingly, the sentence of this Court that the defendant Hugh J. Addonizio shall be committed to the custody of the Attorney General of the United States for a term of ten years, and that, additionally, the defendant Hugh J. Addonizio shall pay a fine of $25,000. That is all." 573 F. 2d 147, 154.

[3] In his opinion granting Addonizio relief under § 2255 in 1977, Judge Barlow stated:

"At the time sentence was imposed, this Court expected that petitioner would receive a meaningful parole hearing—that is, a determination based on his institutional record and the likelihood of recidivism—upon the completion of one-third ($\frac{1}{3}$) of his sentence. The Court anticipated—assuming an appropriate institutional adjustment and good behavior while confined—that petitioner would be actually confined for a period of approximately three and one-half to four years of the ten-year sentence, in view of the fact that he was a first-offender and that there appeared to be little probability of recidivism, given the circumstances of the case and his personal and social history. This sentencing expectation was based on the Court's understanding—which was consistent with generally-held notions—of the operation of the parole system in 1970." App. to Pet. for Cert. 28a–29a (footnotes omitted).

mission might rely on the seriousness of the offense as a reason for refusing a parole which Addonizio would otherwise receive.

In 1973, the Parole Commission markedly changed its policies.[4] Under its new practices the gravity of the offense became a significant factor in determining whether a prisoner should be granted parole. Addonizio became eligible for parole on July 3, 1975. After hearings, the Parole Commission twice refused to release him, expressly basing its refusal on the serious character of his crimes.[5]

---

[4] The Commission commenced using guidelines on a trial basis in 1972 and started to apply them throughout the Nation in November 1973. See 38 Fed. Reg. 31942 (1973). The Commission's present guidelines are codified at 28 CFR § 2.20 (1978). The use of guidelines is now required by statute. See 18 U. S. C. §§ 4203 (a) (1) and 4206 (a).

[5] As Judge Aldisert noted in his opinion for the Third Circuit, the comments made by the Parole Commission on January 13, 1977, explaining its denial of parole are remarkably similar to the reasons given by the trial judge at the time sentence was imposed. The Commission stated:

"Your offense behavior has been rated as very high severity. Your salient factor score is 11. You have been in custody a total of 57 months at time of hearing. Guidelines established by the Commission for adult cases which consider the above factors suggest a range of 26–36 months to be served before release for cases with good institutional adjustment. After careful consideration of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense was part of an ongoing criminal conspiracy lasting from 1965 to 1968, which consisted of many separate offenses committed by you and approximately 14 other co-conspirators. As the highest elected official in the City of Newark, you were convicted of an extortion conspiracy in which, under color of your official authority, you and your co-conspirators conspired to delay, impede, obstruct, and otherwise thwart construction in the City of Newark in order to obtain a percentage of contracts for the privilege of working on city construction projects.

"Because of the magnitude of this crime (money extorted totalling approximately $241,000) its economic effect on innocent citizens of Newark, and because the offense involved a serious breach of public trust over a substantial period of time, a decision above the guidelines is warranted. Parole at this time would depreciate the seriousness of the offense and promote disrespect for the law." 573 F. 2d, at 153–154.

Thereafter, Addonizio invoked the District Court's jurisdiction under 28 U. S. C. § 2255 and moved for resentencing. Following the Third Circuit's decision in *United States* v. *Salerno,* 538 F. 2d 1005, 1007 (1976), the District Court accepted jurisdiction, found that the Parole Commission had not given Addonizio the kind of "meaningful parole hearing" that the judge had anticipated when sentence was imposed, and reduced his sentence to the time already served. The judge stated that he had "anticipated—assuming an appropriate institutional adjustment and good behavior while confined—that [Addonizio] would be actually confined for a period of approximately three and one-half to four years of the ten-year sentence." This "sentencing expectation" was frustrated by the Parole Commission's subsequent adoption of new standards and procedures.

The Court of Appeals affirmed. 573 F. 2d 147. Because of a conflict with the decision of the Ninth Circuit holding that § 2255 does not give district courts this type of resentencing authority,[6] we granted the Government's petition for certiorari in Addonizio's case and in the consolidated case of two other prisoners in which similar relief was granted.[7] 439 U. S. 1045.

---

[6] *Bonanno* v. *United States,* 571 F. 2d 588 (CA9 1978), cert. dismissed, 439 U. S. 1136.

[7] *United States* v. *Whelan & Flaherty.* In that case, two federal prisoners filed motions under 28 U. S. C. §§ 2241 and 2255 challenging their confinement. The § 2241 motion was denied by the District Court; the Court of Appeals affirmed, 573 F. 2d 147, and the prisoners did not seek further review. In the § 2255 motion, which is at issue here, these respondents claimed that the Parole Commission's action frustrated the intent of Judge Shaw, who had originally sentenced them and who had since died. The case was assigned to Judge Biunno, who took the position that "the real issue is whether the Parole Commission's denial of parole was arbitrary and capricious," 427 F. Supp. 379, 381, and concluded that it was not. The Court of Appeals vacated that decision and directed Judge Biunno to reconsider the case to determine whether Judge Shaw's sentencing intent had

## II

We decide only the jurisdictional issue. We do not consider the Government's alternative argument that the significance of the changes in the Parole Commission's procedures has been exaggerated because it always attached some weight to the character of the offense in processing parole applications. Nor do we have any occasion to consider whether the new guidelines are consistent with the Parole Commission and Reorganization Act of 1976, 90 Stat. 219; [8] or whether their enforcement may violate the *Ex Post Facto* Clause of the Constitution.[9]

## III

When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.[10] The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.[11] The question in this case is

---

been frustrated. Proceedings on remand have resulted in the release of both respondents.

[8] See *Geraghty* v. *United States Parole Comm'n,* 579 F. 2d 238 (CA3 1978), cert. granted, 440 U. S. 945 (1979).

[9] See *Rodriguez* v. *United States Parole Comm'n,* 594 F. 2d 170 (CA7 1979).

[10] See *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 274 ("Of course the writ of *habeas corpus* should not do service for an appeal. . . . This rule must be strictly observed if orderly appellate procedure is to be maintained"); *Sunal* v. *Large,* 332 U. S. 174, 181–182; *Hill* v. *United States,* 368 U. S. 424.

[11] Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures. See, *e. g.,* F. James, Civil Procedure 517–518 (1965). Moreover, increased volume of judicial work associated

whether an error has occurred that is sufficiently fundamental to come within those narrow limits.

Under § 2255, the sentencing court is authorized to discharge or resentence a defendant if it concludes that it "was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." This statute was intended to alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement, by providing an equally broad remedy in the more convenient jurisdiction of the sentencing court. *United States* v. *Hayman*, 342 U. S. 205, 216–217.

While the remedy is in this sense comprehensive, it does not encompass all claimed errors in conviction and sentencing. Habeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction. See, *e. g., Ex parte Watkins*, 3 Pet. 193, 202–203 (Marshall, C. J.). In later years, the availability of the writ was expanded to encompass claims of constitutional error as well. See *Waley* v. *Johnston*, 316 U. S. 101, 104–105; *Brown* v. *Allen*, 344 U. S. 443. But unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. *Stone* v. *Powell*, 428 U. S. 465, 477 n. 10. The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill* v. *United States*, 368 U. S. 424, 428.

Similar limitations apply with respect to claimed errors of fact. The justification for raising such errors in a § 2255

with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice. Because there is no limit on the time when a collateral attack may be made, evidentiary hearings are often inconclusive and retrials may be impossible if the attack is successful. See *Stone* v. *Powell*, 428 U. S. 465, 491 n. 31; *Henderson* v. *Kibbe*, 431 U. S. 145, 154 n. 13.

proceeding, as *amicus* here points out,[12] is that traditionally they could have been raised by a petition for a writ of *coram nobis,* and thus fall within § 2255's provision for vacating sentences that are "otherwise subject to collateral attack." But *coram nobis* jurisdiction has never encompassed all errors of fact; instead, it was of a limited scope, existing "in those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *United States* v. *Mayer,* 235 U. S. 55, 69. Thus, the writ of *coram nobis* was "available to bring before the court that pronounced the judgment errors in matters of fact which had not been put in issue or passed upon and were material to the validity and regularity of the legal proceeding itself; as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict or interlocutory judgment." *Id.,* at 68.

The claimed error here—that the judge was incorrect in his assumptions about the future course of parole proceedings—does not meet any of the established standards of collateral attack. There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the "fundamental" character that renders the entire proceeding irregular and invalid.

The absence of any error of this nature or magnitude distinguishes Addonizio's claim from those in prior cases, upon which he relies, in which collateral attacks were permitted. *Davis* v. *United States,* 417 U. S. 333, for example, like this case, involved a claim that a judgment that was lawful when it was entered should be set aside because of a later development. The subsequent development in that case, however, was a change in the substantive law that established that the

---

[12] See Brief for Lewisburg Prison Project as *Amicus Curiae* 10–12.

conduct for which petitioner had been convicted and sentenced was lawful. To have refused to vacate his sentence would surely have been a "complete miscarriage of justice," since the conviction and sentence were no longer lawful. The change in Parole Commission policies involved in this case is not of the same character: this change affected the way in which the court's judgment and sentence would be performed but it did not affect the lawfulness of the judgment itself— then or now. Nor is *United States* v. *Tucker,* 404 U. S. 443, analogous to the present case. In that case, the Court ordered resentencing of a defendant whose original sentence had been imposed at least in part upon the basis of convictions secured without the assistance of counsel. But the error underlying the sentence in *Tucker,* as the Court emphasized, was "misinformation of constitutional magnitude." *Id.,* at 447. We have held that the constitutional right to the assistance of counsel is itself violated when uncounseled convictions serve as the basis for enhanced punishment. *Burgett* v. *Texas,* 389 U. S. 109, 115. Whether or not the Parole Commission action in this case was constitutional, a question not presented here, there is no claim that the action taken by the sentencing judge was unconstitutional, or was based on "misinformation of constitutional magnitude."

Our prior decisions, then, provide no support for Addonizio's claim that he is entitled to relief under § 2255. According to all of the objective criteria—federal jurisdiction, the Constitution, and federal law—the sentence was and is a lawful one. And in our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.

As a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment. The record made when Judge Barlow pronounced sentence against Addonizio, for example, is en-

tirely consistent with the view that the judge then thought that this was an exceptional case in which the severity of Addonizio's offense should and would be considered carefully by the Parole Commission when Addonizio became eligible for parole. If the record is ambiguous, and if a § 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing. Regular attempts to do so may well increase the risk of inconsistent treatment of defendants; on the other hand, the implementation of the Parole Commission's policies may reduce that risk.

Nothing in the statutory scheme directs sentencing courts to engage in this task on collateral attack; quite to the contrary, the proposed system of sentencing review would be inconsistent with that established by Congress. The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission.[13] Whether

---

[13] A federal prisoner is entitled to release at the expiration of his maximum sentence less "good time" computed according to 18 U. S. C. § 4161. In addition, any prisoner sentenced to more than 5 years' imprisonment is entitled to be released on parole after serving two-thirds of each consecutive term or 30 years, whichever is first, unless the Commission determines that the prisoner "has seriously or frequently violated institution rules" or that there is a reasonable probability that he would commit further crimes. 18 U. S. C. § 4206 (d). The Commission has substantial discretion to determine whether a prisoner should be released on parole, once he is eligible, prior to the point where release is mandated by statute. Title 18 U. S. C. § 4203 (1970 ed.), in effect when Addonizio was sentenced, provided:

"If it appears to the Board . . . that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole."

Under the statute now in effect, 18 U. S. C. § 4206, the Commission is to consider the risk of recidivism and whether "release would . . . depreciate the seriousness of [the] offense or promote disrespect for the law."

wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges.[14] The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission.[15] And once a sentence has been imposed, the trial judge's authority to modify it is also circumscribed. Federal Rule Crim. Proc. 35 now authorizes district courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal.[16] The time period, however, is jurisdictional and may not be extended.[17]

---

[14] See generally S. Conf. Rep. No. 94–648, p. 19 (1976).

[15] The trial court may set a defendant's eligibility for parole at any point up to one-third of the maximum sentence imposed, see 18 U. S. C. §§ 4205 (a), (b); 18 U. S. C. §§ 4202, 4208 (1970 ed.). Whether the defendant will actually be paroled at that time is the decision of the Parole Commission. See *United States* v. *Grayson,* 438 U. S. 41, 47 ("[T]he extent of a federal prisoner's confinement is initially determined by the sentencing judge, who selects a term within an often broad, congressionally prescribed range; release on parole is then available on review by the United States Parole Commission, which, as a general rule, may conditionally release a prisoner any time after he serves one-third of the judicially-fixed term"). The trial judge is precluded from effectively usurping that function by splitting a lengthy sentence between a stated period of probation and imprisonment: probation may not be combined with a sentence entailing incarceration of more than six months. 18 U. S. C. § 3651.

[16] Prior to the adoption of Rule 35, the trial courts had no such authority. "The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it." *United States* v. *Murray,* 275 U. S. 347, 358. This rule was applied even though the change related only to the second of a pair of consecutive sentences which itself was not being served at the time. *Affronti* v. *United States,* 350 U. S. 79.

[17] See Fed. Rule Crim. Proc. 45 (b); *United States* v. *Robinson,* 361 U. S. 220.

The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. Nothing in § 2255 supports—let alone mandates—such a frustration of congressional intent.

Accordingly, without reaching any question as to the validity of the Parole Commission's actions, either in promulgating its new guidelines or in denying Addonizio's applications for parole, we hold that subsequent actions taken by the Parole Commission—whether or not such actions accord with a trial judge's expectations at the time of sentencing—do not retroactively affect the validity of the final judgment itself. The facts alleged by the prisoners in these cases do not provide a basis for a collateral attack on their respective sentences pursuant to § 2255.

The judgments of the Court of Appeals are therefore reversed.

*It is so ordered.*

MR. JUSTICE BRENNAN took no part in the decision of this case.

MR. JUSTICE POWELL took no part in the consideration or decision of this case.