**Eugene T. KING, Jr.,
Petitioner-Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, et al., Respondents-Appellees.**

No. 83–5576.

United States Court of Appeals,
Eleventh Circuit.

Oct. 9, 1984.

Laurel White Marc-Charles, Miami, Fla., for petitioner-appellant.

Stanley Marcus, U.S. Atty., Marc Fagelson and Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for respondents-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

HATCHETT, Circuit Judge:

In this case, we examine whether the United States Parole Commission erred when it revoked King's parole and provided that his 1974 ten-year Federal Youth Corrections Act (YCA) sentence could lawfully run until its expiration in October, 1984. Finding no error, we affirm.

Facts

In December, 1974, King was sentenced to a prison term of ten years for bank robbery under the Youth Corrections Act (18 U.S.C.A. §§ 5005, 5010(c) (West 1969)).** King was paroled on this sen-

---

* Honorable James Hughes Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

** Title 18 U.S.C.A. § 5010(c) provides:
  (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further

tence in March, 1978. A short period later, King was arrested and pleaded guilty to one count of bank larceny involving over $500,000 from Banker's Trust in New York City.

In December, 1979, a judge of the Southern District of New York sentenced King to a four-year adult sentence for the Banker's Trust robbery. This sentence was imposed after the sentencing judge was informed of King's extensive cooperation with authorities. King's lawyer asked the judge to recommend that the sentence imposed run concurrently with the parole violation term that King would have to serve. The court stated:

I will do as Mr. Joy [King's lawyer] has indicated, and by these remarks request that consideration be given to the sentence which I am going to impose in connection with your parole violation.

While I don't have the power to compel the Commission to respond to the sentence which I am going to impose, the sentence I am going to impose is imposed with that consideration in mind and with the hope that the Commission will indeed consider the sentence as they evaluate that parole violation.

In response to a question by King's lawyer whether the court hoped that the Parole Commission would consider "a sentence concurrent, or running the violation," the court responded: "That was precisely the purport of what I said, and is my hope."

In June, 1980, the Parole Commission determined that King's four-year adult sentence would run until expiration. In October, 1980, King was given a revocation hearing regarding the remaining term on his 1974 YCA sentence. The Parole Commission determined that King's parole should be revoked and that his YCA sentence should continue to expiration. The result of the Parole Commission's decision to continue King's YCA parole revocation sentence to expiration was that he would remain incarcerated based on the 1974 sentence two years after expiration of his 1979

sentence. His four-year adult sentence was completed on July 2, 1982. The Parole Commission's decision to revoke King's parole and allow the 1974 YCA sentence to run until expiration means that he will not be released until October, 1984.

King initially filed a petition for writ of habeas corpus in April, 1982. In February, 1983, a magistrate held:

A. The Writ of Habeas Corpus *ad subjiciendum* should issue unless, within twenty (20) days from this Order, the Parole Commission holds a further hearing at which Judge Sweet's Recommendation and the original Youth Corrections Act sentence are accorded their pre-emptive right as required by *Ralston* and 18 U.S.C. 505 et seq.;

B. If, after such consideration, the hearing examiners still believe that a concurrent four-year period of incarceration upon the revoked 1974 YCA sentence is inappropriate, they shall set forth, with specificity, the grounds upon which they rely in reaching this result, which grounds may include only those criteria in force in regard to YCA sentences before the promulgation of the 1976 guidelines, and may not rely upon the offense severity rating or salient factor score as now applied ....

In April, 1983, following the district court's order affirming the magistrate's report, the Parole Commission held another hearing; it again recommended that King's YCA sentence run to expiration in October, 1984. In May, 1983, King filed a motion for issuance of the writ of habeas corpus; in June, 1983, the district court denied the writ. King appeals from that denial.

### Discussion

This case concerns the weight which the Parole Commission must give to a judge's recommendation on the disposition of a YCA parole revocation sentence. When Judge Sweet sentenced King to a four-year adult term, he hoped that any parole revocation sentence would run concurrently to

period that may be authorized by law for the offense or offenses of which he stands con-

victed or until discharged by the Division as provided in section 5017(d) of this chapter.

the adult term. He stated that he hoped that the Parole Commission would consider this four-year adult term when they evaluated the subsequent parole revocation question. His recommendation and desire that the Parole Commission impose such a sentence was not, however, adopted by the Parole Commission. The Parole Commission determined that the 1974 sentence should run until expiration; thus, King would have to remain incarcerated for an additional two years after the adult term expired. King contends that the Parole Commission's decision not to follow Judge Sweet's recommendation violated the Supreme Court dictates in *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981).

■■■ Congress and the courts have bestowed upon the Parole Commission extensive discretion regarding parole decisions. A sentencing court has no enforceable right to order a particular parole date. *Payton v. Thomas,* 486 F.Supp. 64, 69 (S.D. N.Y.1980). The Supreme Court in *United States v. Addonizio,* 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979), held:

> [T]he judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for insuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. Nothing in § 2255 supports—let alone mandates—such a frustration of congressional intent.

*Addonizio,* 442 U.S. at 190, 99 S.Ct. at 2243. The discretion bestowed upon the Parole Commission by the Supreme Court in *Addonizio* regarding a parole date is also applicable to a Parole Commission's decision on a parole revocation question. Although Judge Sweet may have recommended that any parole revocation sentence not exceed the four-year adult term he imposed, under *Addonizio,* this remains but a recommendation, not binding on the Parole Commission. The decision to revoke parole and the decision on the length of the subsequent parole revocation sentence are decisions to be made by the Parole Commission.

King's reliance upon *Ralston* is misplaced. The *Ralston* Court was faced with the narrow question of whether a youth offender sentenced to a consecutive adult term while serving a YCA sentence must receive youth treatment for the remainder of the YCA sentence. *Ralston,* 454 U.S. at 203, 102 S.Ct. at 236. The Court held that "the YCA does not require such treatment if the judge imposing the subsequent adult sentence determines that the youth will not benefit from further YCA treatment during the remainder of his youth sentence." *Ralston,* 454 U.S. at 203, 102 S.Ct. at 236–237.

King relies upon that part of the *Ralston* opinion which discusses the authority vested in the Bureau of Prisons. "We reject ... any interpretation that would grant the Bureau independent authority to deny an offender the treatment and segregation from adults that a sentencing court mandates." *Ralston,* 454 U.S. at 211, 102 S.Ct. at 240. The Court went on to hold that "the statute does not give the Bureau any discretion to modify the *basic* terms of treatment that a judge *imposes* under §§ 5010 and 5011." *Ralston,* 454 U.S. at 211, 102 S.Ct. at 241 (emphasis added). The factual differences in this case distinguish it from *Ralston.*

*Ralston* involved the narrow question of whether a youth must be accorded YCA treatment for the remainder of his YCA term after he is sentenced to a consecutive adult term. The court stressed that this decision must be made by the judge, rather than the Bureau of Prisons. Here, however, we are concerned not with YCA treat-

ment following a consecutive adult sentence, but rather with whether the Parole Commission must follow a judge's recommendation concerning a YCA parole revocation sentence. We are dealing not with a youth offender who is in prison and then sentenced to a consecutive adult term, but with a youth offender on parole who is subsequently sentenced to an adult term. The facts in *Ralston* are thus clearly distinguishable from those in this case.

The *Ralston* Court held that only the sentencing judge, not the Bureau of Prisons, could make the decision whether a youth could receive any further benefit from YCA treatment. *Ralston,* 454 U.S. at 213, 102 S.Ct. at 241. The *Ralston* Court did not, however, hold that a sentencing judge's recommendation concerning a subsequent parole revocation question is binding on the Parole Commission. For the above-stated reasons, we hold that the Parole Commission's decision to revoke King's parole and allow the 1974 YCA sentence to run until expiration in October, 1984, was not violative of the *Ralston* decision.

Under the dictates set forth by the Supreme Court in *Addonizio,* we hold that a parole revocation decision rests with the Parole Commission. A sentencing judge's recommendation or hope concerning a parole revocation question is not binding on the Parole Commission. The Parole Commission, in this case, acted within its discretion when it revoked King's parole and ordered the 1974 YCA sentence to run until expiration in October, 1984. We thus affirm.

**AFFIRMED.**