Stephen R. BUZZI, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 87 Civ. 1379 (MP).

United States District Court, S.D. New York.

March 16, 1987.

See also 794 F.2d 677.

---

2. As the plaintiff notes, Berger is the Mayor of a fourth class city. Therefore, under Mo.Rev.Stat. § 79.120 (Vernon's 1987), he votes in Board elections only in the case of a tie. On this basis, the plaintiff argues that the Mayor is not entitled to legislative immunity. The Court need not reach this issue because the plaintiff fails to state claim against the Mayor.

Stephen R. Buzzi, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., for respondent; by Robert Plotz, Asst. U.S. Atty., New York City.

MILTON POLLACK, Senior District Judge.

Buzzi was tried before this Court in April, 1982, on charges of mail fraud and wire fraud.[1] The jury convicted Buzzi and his co-defendant of all counts on April 20, 1982. On June 29, 1982, the Court sentenced Buzzi to a total of twelve years' imprisonment, plus five years' probation to follow the expiration of the prison term or related parole, and ordered him to pay a fine of $7000. Buzzi now collaterally attacks that judgment, alleging that he received ineffective assistance of counsel, that the government withheld exculpatory material, and that the imposition of probation to follow the expired prison sentence was unlawful. Buzzi moves, pursuant to 28 U.S.C. § 2255[2], to vacate his sentence and set aside the conviction against him.

### BACKGROUND [3]

Buzzi, in May and June of 1979, was a salesman for International Metals Exchange, Ltd. (IME), a commodities "boiler-room." As an IME salesman, Buzzi placed telephone calls to potential customers throughout the United States, seeking to induce them to purchase "deferred delivery contracts" for gold and silver. Actually, what he was selling was no more than an option to buy gold and silver. Buzzi employed high pressure sales tactics and outright lies to convince unsophisticated inves-

---

1. 18 U.S.C. §§ 1341, 1343, 2.

2. 28 U.S.C § 2255 provides, in relevant part: A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.... Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon.

3. Many of the issues presented by this motion were raised in Buzzi's previous motion before this Court, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a retrial. That motion was denied by published opinion, which should be consulted for greater detail as to the factual background of this case. *See United States v. Buzzi,* 588 F.Supp. 1395 (S.D.N.Y.1984).

tors to purchase these options. Virtually all of Buzzi's customers at IME lost all the money which they invested with him.

Government witnesses testified at defendant's trial to the details of the IME scam. IME's customers were crassly characterized by the IME salesmen as "jerks," "suckers," or "peasants." [4] According to the testimony, in order to make sales, Buzzi misrepresented to his customers the age and reputation of IME, the nature of IME's business, the extent of IME's links with organized commodities exchanges and the characteristics of IME's clientele. He lied to potential purchasers about the nature of their investment, the refundability of money paid to IME and the riskiness and likely profitability of investments in precious metals.

Approximately two years after his conviction [5], Buzzi moved for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, alleging that he had come upon "newly discovered evidence" entitling him to such relief. This evidence consisted of documents which pertain to contracts between IME and several dealers in rare metals. In his motion, Buzzi asserted that these documents showed that the paper he was selling had value in that IME was prepared to provide the actual metals if its customers ever actually chose to exercise the options they had purchased.

This Court denied Buzzi's motion on several grounds. First, the newly discovered evidence did not undermine the grounds upon which Buzzi was convicted. The indictment had not charged him with selling "naked options," but instead had listed, with great detail, numerous examples of Buzzi having committed fraud on his customers by making false and misleading misrepresentations to them. The defense put in substantial evidence that IME had "covered" its sales to customers by making contracts with metals wholesalers.[6] The government acknowledged this fact in its closing argument.[7] The prosecution contended, instead, that the defendants' fraud had been in leading investors to believe that they were purchasing gold and silver, rather than mere options to buy those metals. Investors were thus unaware that the fee they paid to IME was an option price, and did not entitle them to ownership of any metals. Consequently, the newly discovered evidence of IME's contacts with metal wholesalers simply did not challenge the bedrock fact of Buzzi's fraud upon his customers.

Second, it is dubious that the offered evidence was in the government's possession at the time of trial. The documents dealt with three separate metal wholesalers. The first set, (the Bernstein documents) first became available to the government pursuant to a grand jury subpoena in a related case. This subpoena was issued six months after Buzzi's trial had concluded. Indeed, the prosecutor who conducted the government's case against Buzzi affirmed that he never saw *any* of the documents before or after Buzzi's trial.[8]

Third, none of the documents mention Buzzi or are related to any of the schemes he perpetrated while at IME. Both the Bernstein documents and the second set (the New Era documents) deal exclusively with matters which were completed before Buzzi ever came to work for IME. The third set of documents (the Cohn documents) did contain references to several transactions which occurred during Buzzi's tenure. However, these related to purchases of gold coins by Buzzi's employer to reward his salesmen, not to contracts covering options sold to IME's customers.

**4.** Trial Transcript, p. 705.

**5.** Buzzi's appealed his conviction to the Second Circuit, which affirmed the verdict by an unpublished opinion filed on December 15, 1982. 714 F.2d 118.

**6.** The defense called William Ranney, the principal of IME, who clearly testified that IME had backed its contracts. (Tr. 552, 879, 887).

**7.** Tr. 1156.

**8.** Aff. of K. Chris Todd, pp 4–5. Mr. Todd was the Assistant United States Attorney who handled the Rule 33 motion before this Court; his affidavit, dated July 24, 1984, was filed pursuant to that matter.

In summary, the Court found that the evidence which Buzzi offered in no way undermined the verdict against him and denied his motion for retrial.

### THE PRESENT MOTION

■ Buzzi now seeks to challenge his conviction again. Initially, this Court notes that the showing Buzzi must make to collaterally attack his conviction is significantly higher than even that burden he failed to meet when he directly appealed his conviction.[9] Under § 2255, movant must show that his trial contained a fundamental defect which inherently resulted in a complete miscarriage of justice.[10] Buzzi must show that the proceeding was infected with an error of fact or law of such a fundamental character that it rendered the entire trial irregular and invalid.[11]

Two of Buzzi's three claims [12] again focus on the documents which underlay his unsuccessful Rule 33 motion. First, Buzzi contends that the failure of his counsel to obtain and offer these documents constituted a violation of his right to effective assistance of counsel under the Sixth Amendment to the Constitution of the United States.

■ The Supreme Court has established a two-pronged test to decide if a defendant was denied this constitutional right at trial. First, defendant must show that, in light of all the circumstances, the attorney's conduct was so deficient that it was outside the wide range of professionally competent assistance. Second, defendant must further show a reasonable probability that, but for his attorney's poor performance,

the result of the proceeding would have been different.[13]

■ Buzzi's showing fails both prongs of the constitutional test. First, if, as seems likely, the government did not even possess these documents before Buzzi's trial, counsel's failure to obtain them can hardly constitute professional incompetence. Even assuming *arguendo* that the documents were available if counsel had requested them, it is arguable whether a reasonably competent counsel would even have offered them in evidence. As discussed above, the materiality of the documents was highly dubious. In fact, when Buzzi's superior was tried on the same facts a few months after Buzzi, his counsel did not offer this evidence, even though he had it in his possession.[14]

Second, even if we ignore reality and call Buzzi's counsel's failure to obtain the documents incompetent, there is no reasonable likelihood that, even if he had offered the documents, that the result of Buzzi's trial would have been different. As discussed above, the jury convicted Buzzi of fraud despite evidence that IME had covered its contracts. The documents to which Buzzi refers would merely reiterate that contention. In the view of this Court, which presided at the trial, such evidence would not have changed the jury's verdict that Buzzi's lying to his customers for his own benefit constituted fraud.

■ Buzzi's second claim is that the government intentionally withheld these documents from him in violation of its duty to reveal, upon defendant's demand, material and exculpatory items which are in its possession.[15] Under the relevant law, de-

**9.** *United States v. Addonizio*, 442 U.S. 178, 184 & n. 11, 99 S.Ct. 2235, 2239 & n. 11, 60 L.Ed.2d 805 (1979).

**10.** *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

**11.** *Addonizio*, 442 U.S. at 186, 99 S.Ct. at 2240.

**12.** Buzzi includes a fourth theory in his motion: that "the indictment was multiplicitous in that it charged the same offenses in more than one count." However, no further mention is made of this claim in Buzzi's 8–page Memorandum of Law. This Court declines to try to piece together a claim from this one sentence.

**13.** *Strickland v. Washington*, 466 U.S. 668, 687–694, 104 S.Ct. 2052, 2064–2068, 80 L.Ed.2d 674 (1984).

**14.** Government's Memorandum in Opposition to Defendant's Rule 33 Post-Trial Motion, July 19, 1984, at 2.

**15.** *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Ostrer v. United States*, 577 F.2d 782, 786 (2d Cir.1979), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979).

fendant would be entitled to a new trial if there is a reasonable likelihood that the evidence he was denied could have affected the outcome of the trial.[16]

■ The documents offered by Buzzi represent cumulative evidence of an irrelevant defense. Even if the government had these documents in its possession, and even if Buzzi offered them into evidence, there is no reasonable likelihood that the verdict would have been different, for the reasons previously discussed.

■ Buzzi's final claim is that the Court imposed an illegal sentence upon him because the five-year period of probation did not provide a specific time of commencement. This Court ordered that Buzzi be placed on probation for a five-year period, that period to begin after his imprisonment and parole, on other counts, was completed. Buzzi has offered no cases which suggest there is anything improper about such a sentence.

In his argument on this point, Buzzi, citing the federal probation statute,[17] contends that a court may not suspend a sentence and place the defendant on probation consecutive to a prior sentence of greater than five years. This statement is wrong both on the facts and on the law. First, the statute Buzzi cites prescribes the rules when a court suspends a sentence and orders probation instead. There was no suspension of sentence in this case. Buzzi was sentenced on the basis of being convicted on seven counts. He received four years each for three pairs of counts. On the seventh count, he was sentenced to a five-year term of probation.

Second, Buzzi appears to have misread the statute. The statute states that the period of probation shall not exceed five years. No period of probation applied to Buzzi exceeded five years. His reference to "split-sentence" cases [18] (where imprisonment and probation are combined on a single count) are also inapposite. Here, Buzzi's probation and imprisonment arose from separate counts.

### CONCLUSION

The Court finds that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." [19] Thus, the Court declines his invitation to hold an evidentiary hearing on the issues presented. Buzzi's motion to set aside the verdict against him and for vacation of his sentence is denied.

So Ordered

---

16. *Agurs,* 427 U.S. at 103–04, 96 S.Ct. at 2397. The standard of materiality varies, depending on the specificity of the demand made by defendant and on whether the government knowingly used perjured testimony. *Ostrer,* 577 F.2d at 786. However, this court will not split hairs by judging the evidence under the various standards of materiality. Even under the strictest test, applied above, the documents Buzzi offered were not material.

17. 18 U.S.C. § 3651.

18. *See, e.g., United States v. Nunez,* 573 F.2d 769 (2d Cir.), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978).

