**UNITED STATES of America, Plaintiff,**

v.

**Marco GLITTA, Defendant.**

**No. 86 CR 717.**

United States District Court,
N.D. Illinois, E.D.

Oct. 7, 1988.

Anton R. Valukas, U.S. Atty., Michael T. Mullen, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Adam Bourgeois, Chicago, Ill., Susan G. James, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Marco Glitta ("Glitta") is now serving an eight-year term in the custody of the Attorney General, with the time in actual custody to be followed by a five-year period of probation, under a sentence imposed by this Court February 11, 1987. This Court is now called upon to deal with Glitta's Fed.R.Crim.P. ("Rule") 35(b) motion for reduction of sentence (the "Motion"). For the reasons stated in this memorandum opinion and order, the Motion is denied.

At the time Glitta committed his crime and was then sentenced, the presently-effective version of Rule 35(b) had not yet come into operation.[1] Accordingly the relevant version of Rule 35(b) is this one, which had first taken effect August 1, 1985:

> **(b) Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Although the Motion was filed June 5, 1987 and was therefore timely because made within 120 days after the February 11 sentencing, it did not come to this Court's attention until much later.[2] Indeed, when several months after expiration of the Rule 35(b) 120-day period a member of Glitta's immediate family wrote this Court a letter asking for relief on Glitta's behalf, this Court reviewed its chambers file[3] and wrote back saying it was without

---

1. That current version's effective date was linked to the effective date of Section 215(b) of the Comprehensive Crime Control Act of 1984, Pub.L. 98–2015: Each was originally set to take effect November 1, 1986, then both were extended to November 1, 1987.

2. That lapse is unexplained. When Glitta's counsel ultimately filed a March 17, 1988 "Supplementary Memorandum in Support of Motion for Reduction of Sentence" (more than nine months after the Motion and several months after the Glitta family member's letter referred to in the next sentence of the text), this Court received a copy of that supplement (though it had not received the original or any copy of the Motion itself). Because the supplement referred to the earlier filing of the Motion, this Court had its clerk obtain the court file and found the original Motion there. It bore an erroneous "87 CR 717" number instead of the correct "86 CR 717," an error that had been repeated in the March 17, 1988 supplement filed by Glitta's counsel. On the original Motion and its supporting memorandum, that error had been corrected by a handwritten note (presumably made by someone in the Clerk's Office) before filing. Whether as a result of that error or for some other reason, the second copy of the Motion and memorandum—if any were in fact filed—were never transmitted to this Court's chambers.

3. Whenever this Court sentences any criminal defendant, it retains its chambers file (containing the indictment or information, any other filed documents that remain relevant after sentencing, the presentence investigation report, this Court's own notes on the sentencing hearing and all post-sentencing materials) until any custody sentence and probationary term have been completed.

power to act because no Rule 35(b) motion had been filed within the then-jurisdictional 120–day period.

Still more time passed, and on March 17, 1988 (over 13 months after the original sentencing) Glitta's counsel filed the "Supplementary Memorandum" referred to in n. 2. That document referred to the original Motion and thus (as n. 2 explains) led to this Court's discovery of the existence and timeliness of the original Motion. Several months have passed since then, with the further delay being ascribable to this Court in dealing with the issues (both jurisdictional and substantive) presented by the Motion.

Most recently this Court asked both Glitta's counsel and Assistant United States Attorney Michael Mullen to file supplemental submissions dealing with the question whether this Court still had jurisdiction to act under the applicable version of Rule 35(b)—more precisely, under its "reasonable time" limitation. That issue has been effectively addressed by government counsel in a brief response filed September 28, but Glitta's counsel's supplement filed September 30 has missed the jurisdictional point entirely.[4]

Not surprisingly, none of the authorities cited by the United States (and Glitta has referred to none bearing on the issue at all) deals with—or even suggests an answer to—the unusual question whether a delay in ruling on a timely Rule 35(b) motion, caused by the sentencing court's unawareness of the existence of that motion until long after the 120–day period had elapsed, violates the "reasonable time" requirement. Whatever the answer may be on that score, any post-awareness delays as-

cribable to this Court do enter into the jurisdictional reasonableness determination (see, e.g., *United States v. Smith,* 650 F.2d 206, 209 (9th Cir.1981); *Diggs v. United States,* 740 F.2d 239, 246–47 (3d Cir.1984)).

For present purposes, however, it may be assumed arguendo that Glitta does not face a jurisdictional reasonableness bar (though that is at least questionable under the circumstances). That assumption may be indulged because this Court is constrained to deny the Motion on the merits in any event. This opinion turns to those merits.

Glitta's crime was an extremely serious one, involving his planned and solicited purchase of remotely controlled bombs intended to kill the driver of a car traveling at high speed[5] and to blow up a building.[6] Moreover, the situation was aggravated by Glitta's wholly implausible account of the offense at a time that he should have been exhibiting remorse as well as acknowledging his guilt. Glitta gave the cock-and-bull story that he had not intended to use the bombs he had ordered, but instead intended to engage in some wholly innocent "tinkering" with them—an account that was found deceptive by two polygraph examiners, one hired by ATF and one hired by Glitta himself, and that this Court too found totally unbelievable.[7]

As for what post-sentencing considerations should inform this Court's decision, the United States' contention has substantial force. If this Court *does* still have jurisdiction under the "reasonable time" provision, it would seem only right for this Court to put itself into precisely the same position it would have occupied had the timely-filed Motion been brought to its at-

---

4. Glitta's counsel argues against the *new* and substantially more restrictive version of Rule 35(b) that took effect November 1, 1987—a straw man that no one has suggested could have anything to do with the case at all. Thus the first 6½ pages of the supplemental filing by Glitta's counsel have no relevance to the present consideration.

5. If that planned bombing had been implemented from a distance of more than a mile away at a time when the car was being driven (those were Glitta's specifications when he was ordering the car bombs), that would not only mean

death to the car's driver but would also pose an obvious further threat to the safety and lives of other wholly uninvolved and innocent people.

6. Again there would be a clear danger to lives as well as property from the remote-control operation of such a bomb.

7. More details of the offense and the events up to and including Glitta's sentencing are given in a brief and accurate summary in the government's latest submission. Its relevant portion is reproduced as Appendix A to this opinion.

tention immediately and had it then been ruled upon within a brief and reasonable time after that. To permit later events—events occurring long after the normal 120–days–plus–reasonable–time period—to influence this Court's decision would subvert the reasons Rule 35(b) had that time limitation in the first place. As our Court of Appeals put it in *Gaertner v. United States*, 763 F.2d 787, 791 (7th Cir.1985) (citations omitted):

> Federal courts have pointed out two reasons for this limitation of the district courts' discretion. First, courts have recognized that Rule 35's 120–day time limitation protects sentencing judges from continuing and successive importunities by defendants.... Second, courts have observed that the time limitation assures that the district courts will not misuse their power to reduce a sentence as a substitute for consideration of parole by the Parole Board.... In other words, the 120–day time limitation guarantees that sentencing judges will not usurp the function of the parole authorities in determining when an incarcerated defendant's progress in rehabilitation justifies an early release from prison. The Supreme Court emphasized the importance of this separation of powers between the sentencing judge and the parole authorities in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) [8]....

On the facts known and knowable to this Court when and shortly after the motion was filed—the facts and considerations set forth in the Motion and its supporting memorandum themselves—no Rule 35(b) relief is called for. This Court took all circumstances applicable to Glitta into account in fashioning the original sentence, including such matters as his crime-free past, the impact of a custody sentence on his innocent family and his health problems.[9] All the mitigating factors were outweighed by the offense and the aggravating circumstances.

To be sure, what has happened since then has deepened the tragedy always inflicted by crimes on one class of innocent victims: their families. In that respect, the Motion's supporting memorandum sets forth a number of considerations amplifying on claimed mitigating factors, including a section captioned "The Balance of Fairness and Equity." But all those considerations are fully available to the Commission for *its* consideration from time to time and at any time. Under the separation of powers created by the drafters of former Rule 35(b), courts were intended to have only a limited role in post-sentencing decisions—not to engage in an uninhibited second-guessing of their own rulings or in a substitution for the functions vested by law in the Commission. This Court's fulfillment of that limited role does not counsel a reversal of its original fully-considered sentencing decision.

### Conclusion

Substantial doubt exists as to the residual jurisdiction of this Court to take a second look at the sentence it pronounced on Glitta in February 1987. But even if that doubt is resolved entirely in Glitta's favor, as this opinion has assumed, the relevant considerations under the applicable version of Rule 35(b) do not call for a reduction in Glitta's sentence. In accordance with the allocation of powers contemplated by Rule 35(b), such equitable considerations are fully available for evaluation by the executive branch—the Commission—under Section 4205(b)(2). Accordingly the Motion is denied under either view of the jurisdictional question.

---

8. [Footnote by this Court] To be sure, *Gaertner* urged a stringent 120–day jurisdictional limitation, a reading of Rule 35(b) that was later rejected by the 1985 amendment to Rule 35(b) inserting the "reasonable time" provision (see Notes of Advisory Committee on Rules to the 1985 amendment). But the *Gaertner* statement of the policy underpinnings of the Rule remains unexceptionable.

9. In the latter respect, this Court deliberately imposed Glitta's sentence under 18 U.S.C. § 4205(b)(2) ("Section 4205(b)(2)") so that the United States Parole Commission (the "Commission") had the power to grant an early—even immediate—parole if it found Glitta's situation called for such relief.

## APPENDIX A

As this Court will recall, in late August and early September 1986, the defendant requested a co-worker to build two car bombs and a bomb that could be used to blow up a building for $2,000. The defendant was quite specific when he was ordering the bombs. He stated that the car bombs had to insure "total destruction" of a Cadillac so that it would be blown to "kingdom come." The defendant made it very clear that he did not just want to blow up the car. In fact, Mr. Glitta stated that he "wanted the driver" and not the car. Additionally, he wanted a remote controlled device that could detonate the car bombs from a distance of 1 to 1½ miles, while the car was travelling at a speed of 50 m.p.h. Mr. Glitta also stated that if these bombs were successful, there would be future bomb orders.

Mr. Glitta also was quite specific when it came to the other bomb. He stated that the bomb had to be small enough to be concealed under a coat or jacket because the bomb would have to be carried past a clerk and taken into a back room. Mr. Glitta stated that he wanted total destruction of the building and that he also wanted to be able to operate the device by remote control.

Subsequent to his arrest, the defendant stated that he only wanted to "tinker" with the dynamite laden bombs in his Elmwood Park, Illinois garage. The defendant explained that he requested the remote control devices just in case he wanted to detonate the bombs. He stated that he would be able to blow them up in the woods on a tree stump with the remote control devices. An ATF polygrapher and a polygrapher hired by Mr. Glitta both concluded that he was deceptive when he answered questions about what he intended to do with the bombs. This Court logically concluded that Mr. Glitta's explanations were unworthy of belief.

Mr. Glitta pled guilty to violations of 26 U.S.C. § 5861(b) and 26 U.S.C. § 5861(d) and was exposed to a potential period of incarceration of 20 years imprisonment and a potential fine of $20,000. This Court exercised its discretion and sentenced the defendant to eight years of incarceration. In meting out its sentence, this Court carefully weighed the defendant's background, lack of criminal record, family situation, potential for rehabilitation and involvement in and culpability for the underlying crime.