ROSENN, Circuit Judge,
concurring and dissenting.
I concur in the majority’s holding that the district court properly denied Friedland relief under his motions pursuant to 28 U.S.C. § 2255 and both versions of Fed. R.Crim. Proc. 35. I believe, however, that the Parole Commission did not fully consider Fried-land’s case for parole, gave no valid reasons for an upward departure from its guidelines, and, thus, abused its discretion. I therefore must respectfully dissent from that portion of the majority’s opinion dealing with that issue, particularly Part 11(3).
Then-Chief Judge John Gerry, an able and experienced trial judge of the United States District Court for the District of New Jersey, sentenced Friedland. Judge Gerry imposed a sentence which he believed would adequately reflect the seriousness of Friedland’s offenses, punish Friedland, and permit his rehabilitation. With the facts before him of all of Friedland’s offenses, including his conduct in leading the United States Attorney’s office for the District of New Jersey to believe that he would cooperate and instead committing another offense, and his flight while on bail, Judge Gerry imposed a sentence which would allow for parole eligibility after a period of 40 to 52 months of incarceration. Friedland has, as of March 25, 1996, served 100 months.
I recognize, as the majority notes, that the presumptive parole date set by Judge Gerry does not have the force of law. Nor do I see merit in Friedland’s procedural argument that the imminent dismantlement of the Parole Commission requires a return to this court’s rule in United States v. Salerno, 538 F.2d 1005 (3d Cir.1976). Because the Parole Commission is still in existence, the Supreme Court’s rule set in United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) still applies. Thus, I agree that the Parole Commission’s departure from the parole date target set by Judge Gerry does not give the courts authority to reduce his sentence. The Commission may disregard the guidelines if there is good cause for so doing. See, 18 U.S.C. § 4206(c).
Nonetheless, if the Parole Commission wishes to exercise its power to, in effect, overrule Judge Gerry’s and the defendant’s parole expectations, and disregard the recommendation of the Commission’s interviewing panel in this case, it cannot do so arbitrarily and capriciously.
The reasons cited by the Commission lack substance. They rely solely on facts considered by the sentencing judge when he fixed the sentence; the extended period of the fraud, the aborted cooperation, the flight, and the misconceived amount of loss.[1] The Commission cited no factors that the trial judge had not properly taken into account in setting the sentence. His initial sentence was 7 years; his final sentence, in light of the second fraudulent offense and the factors now assigned by the Commission, was 15 years, 11 months, and 6 days. Reiteration of *1544 these reasons, therefore, cannot constitute “good cause” for denying Friedland any parole at all.
The majority points out that 18 U.S.C. § 4206(a)(1) authorizes a denial of parole if it may “depreciate the seriousness of offense or promote disrespect for the law.” It is this statute which the United States Attorney relied upon in urging the Commissioners to deny Friedland parole. Friedland’s offenses were serious, but he has served more than twice the sentencing judge’s expectation in punishment for offenses that involved no violence, no assault upon any person, no drugs, no organized crime. Instead of pointing to material factors that the sentencing judge may have disregarded or ignored, the Commission trumps the sentence of the judge by its own views of what the sentence should have been. And it does so in total disregard of the appellant’s exemplary prison record and of its own panel’s recommendation that the prisoner be granted “a presumptive parole after service of 84 months provided the committed fíne is paid or otherwise deposed of according to law.” This suggested presumptive parole date even includes an extra 20 months of confinement above the guidelines because of the Commission of the second offense “while subject was on bond on the first.”
The Commission’s speculation that parole would depreciate the seriousness of the offense and promote disrespect for the law is a eonclusory statement. It has no facts to support it and relies on similar eonclusory statements of the prosecuting attorney and the Department of Labor Special Agent. No personal victim opposes the parole; the appellant has done nothing since his incarceration that remotely suggests any misconduct or further disregard for the law on his part. On the contrary, to the extent permitted, he has attempted to assist the Government in enforcing the law against those engaged in crime. From time to time, he has been helpful. In the meantime, numerous white-collar criminals, some with offenses much more far-reaching and with offenses on a greater scale than this applicant, have been paroled after serving two to five years of their sentences. This includes Friedland’s own co-defendants, who, as fiduciaries of the Teamster’s pension fund, were in as great or a greater position of trust than Friedland when they participated in the fraud.[2]
In considering the prisoner’s application for parole, it seems to me that sound reasons, as well as the Commission regulations, suggest that the Commission focus on the applicant’s conduct since he began the service of his sentence, not his behavior that brought him into conflict with the law. The purpose of penal punishment is not only to deter crimes but also rehabilitate.[3] Regulations of the Parole Commission require it to consider any reasonable information concerning the prisoner. 28 C.F.R. 2.19(b)(1). The Commission may even consider an advancement of the presumptive release date for (1) superior program achievement over a period of 9 months in custody, pursuant to the provisions of 28 C.F.R. 2.60 and/or assistance in the prosecution of other offenders pursuant to 28 C.F.R. 2.63. Friedland has provided both.
Friedland’s institutional record demonstrates an excellent adjustment, a sincere respect for law and order. In addition to the positive reports and volunteer activities noted by the majority, Friedland also participated in the financial responsibility program to *1545 make restitution. He wrote a letter to the Parole Commission that shows his remorse and understanding of the seriousness of his crime. Every person who had personal contact with Friedland, from psychologists to the original panel of parole examiners, found him to be a candidate for parole. The Commission, however, has ignored completely any factor favorable in Friedland’s behavior since his incarceration.
I also note in passing the extreme unlikeliness of recidivism in this case. Friedland’s crime was not one of violence, nor does he have a violent character. Rather, he perpetrated a fraud made possible by a conflation of circumstances that are unlikely ever to happen again. He is now sixty years of age. He has been dismissed as counsel for Teamster Local No.701, the victim of the fraud. He has been publicly humiliated and imprisoned. It is highly unlikely that he will hold a position of trust again. Besides, if paroled, he would be on probation and strict supervision. This is obviously a time for healing, not vindictiveness on the part of the prosecution. Besides, parole is only a conditional release, it is a modified continuation of punishment, and the parolee is under supervision and subject to return to prison for any infraction.
Moreover, the procedure used by the Commission in deciding this case is questionable. A two-person panel of parole examiners originally conducted a hearing in this case at which Friedland appeared arguing for parole and two representatives of the United States Attorney’s office in New Jersey and the United States Department of Labor appeared in opposition of parole. The panel had an opportunity not only to study the record, the offenses and sentencing, but also to weigh the positions of the subject and the Government. The two members of the panel were the only persons in the Commission to meet personally with both Friedland and the Government representatives opposing his parole. Paul C. Kurtz of the National Correctional Counseling Center in Washington, D.C., speaking in behalf of Friedland, urged parole at the time in accordance with the parole guidelines. Kurtz did not believe it would depreciate the seriousness of the offense if the subject were paroled because this case did not differ from any other high profile fraud case, including Ivan Boesky, Jim Bakker or Michael MUliken. Counsel for Friedland observed at the hearing that there was no publicity in the case but only manifestations of political raiicor from the Office of the United States Attorney for the District of New Jersey. The panel noted: “This was evident because subject has attempted to cooperate on numerous occasions but this had not been encouraged by that office.”
Under Parole Commission procedures, it is usual for the panel’s decision to be reviewed by the Regional Commissioner. In this case, Friedland’s application was appropriately designated as one for original jurisdiction. This means that the Regional Commissioner, after reviewing the decision of the panel and making his own recommendation, sends the case to the National Parole Commission for final review. Its decision is the final one. Friedland did not have the opportunity to appear before either the Regional Commissioner or the National Commissioners.
Applicants for parole do not have a right to personal appearances before review boards. See, e.g., Billiteri v. Board of Parole, 541 F.2d 938 (2d Cir.1976). Therefore, review boards should be particularly deferential to the findings and recommendations of the interviewing panel, presumably professionals, who weighed the merits of the presentations made in behalf of and in opposition to parole at that time. The panel found:
“It is the panel’s finding’s that subject should be paroled because the sentencing judge has no objection, but on the contrary, recommends parole in accordance with the parole guidelines. In making its determination as to when subject should be paroled, the panel believes that the negative information provided by the representatives of the government is off-set by the favorable factors regarding subject which includes his cooperation and his institutional adjustment.”
As an appellate court, we have many times recognized that the district courts which we review are in much better positions to judge such matters as the credibility, demeanor of witnesses, the harm of an evidentiary error, *1546 and the weight of the evidence. We recognize that our review of a dry record, of necessity, cannot be as comprehensive as the review of the judge who watched and heard the issues being played out. The Regional Commissioner and the National Commissioners here should exercise the same appellate restraint. They are not in a position to make credibility judgments, but rather should defer to those of the panel. Their review should by no means be a rubber-stamp of the panel decision, any more than appellate review rubber-stamps district court decisions. Nonetheless, like appellate courts, the Commissioners should specifically note where the panel committed error if they wish to overrule its recommendation.
The Commissioners, all political appointees, did not do this in Friedland’s application. The Regional Commissioner, in his memorandum, merely details the facts of Friedland’s pre-incarceration offenses, and concludes: “The aggravating factors of subject’s [pre-sentence] behavior outweighs his cooperation and institutional adjustment significantly.” This conclusory statement does not explain why the same aspects of Fried-land’s behavior, which were taken into account by both Judge Gerry and by the panel examiners, merited more confinement than any of them had found appropriate. The National Commissioners adopted the Regional Commissioner’s recommendation. Neither review board disputed, or even mentioned, the carefully weighed factual findings and the conclusions made by the panel at its hearing of Friedland on March 10, 1993, regarding his institutional adjustment, his remorse, or his ability to function in society. Just as appellate courts cannot reject out-of-hand the factual findings of trial courts, the Commissioners should not be able blithely to ignore those of the panel examiners who actually conducted a hearing on Friedland’s application for parole.
These procedures do not show proper deference to the panel finders of fact. Also, the Parole Commission usurped judicial power by departing from the parole guidelines solely for reasons already considered by Judge Gerry. Moreover, the Commission does not point to any fact that justifies the outright denial of any parole.
I therefore believe that the Parole Commission abused its discretion in rejecting Friedland’s application. In turn, the district court perpetuated the conclusory action of the National Commission. Hence, I respectfully dissent. Accordingly, I would vacate the judgment of the district court with directions to remand the case to the Parole Commission with instructions to consider with proper deference the findings of the hearing panel and for such further proceedings as are consistent with this opinion.

. The National Parole Commission asserted that Friedland caused a loss of $4.5 million dollars. In fact, as this court determined in United States v. Zauber, 857 F.2d 137 (3d Cir.)988) cert. denied sub nom, Scotto v. U.S., 489 U.S. 1066, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989), although Fried-land did, in violation of his fiduciary duty, put $20 million dollars of the Teamsters Pension Fund improperly at risk, the Fund did not lose money from either the corpus or from the guaranteed rate of return. Zauber, at 144. Friedland did make a profit from his illegal actions, but such profit did not cause a corresponding loss from the Fund. The Parole Commission was not at liberty implicitly to overrule such a judicial finding.

. Friedland wrote to Judge Gerry in 1994: "Judge Gerry, I am now 56 years old, having served 84 months with a guideline range of 40-52 months.... I entered jail for the first time at the age of 50. You observed at my sentencing that the second crime was, in reality, a continuation of the original conspiracy. I have seen inmate after inmate paroled, including persons with histories of escape from institutions. I have seen persons with long criminal histories paroled. I ask the Court to take judicial notice of these facts from its own experience and knowledge. .. .Judge Gerry, X have been punished more than Michael Millken [sic] who endangered our economy, more than Jimmy Hoffa who corrupted the entire Teamsters Union, more than most murderers, who serve an average of six and one-half years, and about three times as much as my co-defendants, [footnote omitted] The Parole Commission decision is arbitrary.”

. “The primary purpose of parole has always been to assist prisoners in their reintegration into society as law-abiding citizens after a period of confinement.” T.C. Kowalski, The U.S. Parole Commission, 39 Federal Bar News and Journal, 440 (1992).