748

IV.

Harold A. Rothstein, pro se.

Dean J. Pollales, Asst. U.S. Atty., for the U.S.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On May 9, 1988, Harold Rothstein appeared before Judge Nicholas J. Bua of this district and entered pleas of guilty to one count of wire fraud and one count of fraudulent use of a credit card, in violation of 18 U.S.C. § 1343 (1982) and 15 U.S.C. § 1644(a), respectively. Rothstein came to court with counsel. As part of a plea agreement which Rothstein signed in open court, Rothstein acknowledged that he was pleading guilty freely and voluntarily. He stated further that he was guilty of the two charges, and that no one had made promises to him other than those in the

**UNITED STATES of America**

v.

**Harold A. ROTHSTEIN.**

**Nos. 89 C 4530, 87 CR 810.**

United States District Court,
N.D. Illinois, E.D.

April 30, 1990.

plea agreement in order to induce him to plead guilty. The government's chief promise to Rothstein was to dismiss the original indictment against him. The government expressly reserved the right to recommend a sentence, which had the potential of being fifteen years imprisonment and a $251,000 fine.

Judge Bua reviewed these elements of the plea agreement with Rothstein in open court, and Rothstein reaffirmed his understanding of each of them. Rothstein acknowledged his guilt and the court's power to sentence him to the maximum term described above. Rothstein was bothered by one matter, however. At the time of his plea hearing, Rothstein faced the possibility that the U.S. Parole Commission would revoke his parole on an earlier conviction. When Judge Bua asked Rothstein whether he believed he would get credit for the time which Rothstein was serving pending sentencing, Rothstein interrupted, and expressed his understanding that "the time is running concurrent, and, therefore, protects me from any consecutive sentence to my original sentence...." Judge Bua acknowledged the government's representation that Rothstein would receive credit for time served pending sentencing, then continued:

> THE COURT: Other than that, has your attorney made any promise to you in any other phase of the sentencing?
>
> ROTHSTEIN: No, sir.
>
> THE COURT: Very well. Has any person assured you or led you to believe that you would be placed on probation or be given a light sentence in return for your plea of guilty?
>
> ROTHSTEIN: No, sir.
>
> THE COURT: Has any person used any threats, force, pressure or intimidation to make you plead guilty?
>
> ROTHSTEIN: No, sir.
>
> THE COURT: Finally, is this plea of guilty voluntarily made and of your own free will and accord?
>
> ROTHSTEIN: Yes, your Honor.

Plea Hearing Transcript 9–10.

Rothstein appeared before this court for sentencing on June 10, 1988, again with counsel present. The government recommended that the court impose a prison term of fifteen years. Rothstein's counsel urged the court to put Rothstein in a treatment program. The court ended up sentencing Rothstein to five years imprisonment followed by five years probation. Neither counsel, however, questioned the impact of the court's sentence on Rothstein's existing parole. Indeed, the court expressed its uncertainty as to what influence its sentence would have. See Sentencing Transcript 58, 60.

Rothstein did not appeal the court's acceptance of his guilty pleas or its sentence. He did move under the prior version of Rule 35(b), Fed.R.Crim.Pro., for a reduction in and/or correction of his sentence. In that motion, Rothstein asked the court to make his probation term run concurrently with his five-year prison term, and to correct certain alleged errors in the victim impact statement filed in this matter. Rothstein did not attack the validity of his plea or charge the government with breaking any promises to him in his motion, however. This court subsequently denied Rothstein's motion.

On March 23, 1989, Rothstein learned from the Parole Commission that it had revoked his parole. The Commission further determined that Rothstein's sentence on the charges to which he pleaded guilty in this court would run consecutively, rather than concurrently, with his prior sentence. Rothstein thus moved under 28 U.S.C. § 2255 (1982) to vacate this court's sentence, or alternatively to withdraw his plea of guilty. Rothstein argues that the government broke a promise that his old and new sentences would run concurrently, and that his plea was constitutionally defective because he did not fully understand the consequences of it.

The government rightly points out that Rothstein never attacked his guilty plea or asserted a promise from the government by direct appeal from this court's sentence or by way of his Rule 35(b) motion. Accordingly, Rothstein may maintain his present grounds for relief under § 2255 only if he can demonstrate good cause and

actual prejudice from not having raised them on appeal. See *Williams v. United States*, 805 F.2d 1301, 1303–04, 1306–07 (7th Cir.1986). Good cause in a habeas proceeding "ordinarily turn[s] on whether the prisoner can show some objective factor external to the defense" which impedes that defense. See *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (petition for habeas corpus under 28 U.S.C. § 2254). Actual prejudice exists when the alleged defect in the proceeding so infected it "that it resulted in a fundamental miscarriage of justice." *U.S. v. Kovic*, 830 F.2d 680, 685 (7th Cir.1987).

If Rothstein believed at the time he entered his pleas that his new sentence would run concurrently with his prior sentence,* Rothstein would be able to demonstrate good cause for not having raised his present arguments on appeal or in his Rule 35(b) motion. Nothing in the record indicates that the sentence which this court imposed would run consecutively with Rothstein's prior sentence. Indeed, the court expressed no view of the matter when it sentenced Rothstein. Rothstein was not aware that his new terms would run consecutively with his old term until the Parole Commission revoked his parole—long after the time Rothstein could have appealed, and months after Rothstein filed his Rule 35(b) motion.

This takes Rothstein only half the way towards his goal. Even if he could demonstrate good cause, Rothstein could not demonstrate actual prejudice. The court begins with Rothstein's allegation that the government promised him that his old and new sentences would run concurrently. The allegation is meritless. Rothstein's written plea agreement contains no promise whatsoever from the government that the old and new sentences would be concurrent. The government expressly reserved the right to recommend any sentence it desired to the court, and in fact asked for a sentence which would have resulted in more prison time for Rothstein than he faces now. Judge Bua questioned Roth-

stein whether anyone had promised him anything not stated in the plea agreement, and Rothstein said no. In sum, there is no support for Rothstein's allegation of a promise from the government on the effect of his new sentence, and the court will not countenance the argument further. See *Key v. United States*, 806 F.2d 133, 135–36 (7th Cir.1986) (court need not accept § 2255 petitioner's allegations about promises not contained in plea agreement, where allegations lack support in the record and are contrary to defendant's representations at plea hearing).

Rothstein's second argument, that he did not apprehend the possibility at the time he pleaded guilty that his new sentence could run consecutively to his old sentence, is also without merit. "The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' '[I]t must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Teller*, 762 F.2d 569, 575 (7th Cir.1985) (citations omitted), quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), and *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970). However,

> [t]he rule that a plea must be intelligently made ... does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended ... the likely penalties attached to alternative courses of action.

*Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970). Accordingly, a criminal defendant need not comprehend all of the "collateral" consequences of his or her plea in order for him or her to make that plea knowingly and intelligently. See, for example, *U.S. v.*

---

* The government disputes this allegation.

 

*Ray,* 828 F.2d 399, 417–20 (7th Cir.1987) (court need not inform accused of possibility that new federal sentence would run consecutively with older state sentence); *U.S. v. George,* 869 F.2d 333, 337–38 (7th Cir.1989) (counsel for accused need not inform accused of likely consequences of plea for deportation proceedings).

The Parole Commission's decision to revoke Rothstein's parole and append this court's sentence to his existing sentence was a collateral, and not a direct, consequence of this court's plea. Neither this court nor the United States Attorney directs the Parole Commission. "Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate," such that a court cannot enforce its expectations of release even as to a prisoner which the court itself has sentenced. *United States v. Addonizio,* 442 U.S. 178, 188–89, 190, 99 S.Ct. 2235, 2240–41, 2243, 60 L.Ed.2d 805 (1979). As Rothstein himself recognizes in a letter which he addressed to this court on September 25, 1989, this system might have been unfair. That may be why Congress ended this part of the Commission's authority over prisoners sentenced pursuant to the Sentencing Guidelines. Nevertheless, the Commission's nearly sacrosanct authority over Rothstein's older sentence remains, and its decision was a wholly collateral result of the plea which Rothstein entered here.

Rothstein's purported misunderstanding of the way his new sentence would influence his older sentence, or vice versa, did not render his guilty plea involuntary or uninformed. It thus was not a fundamental miscarriage of justice for this court to accept it. Moreover, Rothstein acknowledged that he had committed the crimes of which he was accused. The government's summary of its evidence indicates that it would have been hard for Rothstein to prevail at trial even if he had a trial. The court thus holds that Rothstein suffered no actual prejudice on account of pleading guilty in this matter.

The court denies Rothstein's motion to vacate his sentence or withdraw his plea of guilty.