**UNITED STATES of America**

v.

**Edna COONAN, Defendant.**

**No. 87 Cr. 249(WK).**

United States District Court,
S.D. New York.

Nov. 13, 1990.

**653**

MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Edna Coonan moves for reconsideration of her motion for a new trial under Rule 33 or in the alternative for a reduction of sentence under Rule 35, which I denied in its entirety in my Memorandum & Order of August 3, 1990, 1990 WL 116758. The government asserts that the court is without jurisdiction to entertain the instant application in so far as it seeks reconsideration of the denial of Rule 35 relief. For reasons that follow, the application for reconsideration is granted, and, upon such reconsideration, I adhere to my original decision except that the sentence is modified so that it is imposed pursuant to 18 § 4205(b)(2).

## BACKGROUND

On May 12, 1988, Edna Coonan was sentenced to fifteen years in prison and fined $200,000 upon a conviction arising from her involvement in the racketeering activities of the "Westies," an organized crime group that controlled criminal activities in the mid-town Manhattan neighborhood commonly referred to as "Hell's Kitchen." The Court of Appeals affirmed and reaffirmed her conviction on, respectively, May 24 and July 5, 1989. On November 27, 1989, the Supreme Court denied her petition for a writ of *certiorari*, and, on December 1, 1989, the Court of Appeals' mandate issued.

Four days later, on December 5, 1989, she filed—in a single submission requesting oral argument—her motion for a new trial pursuant to Rule 33 or in the alternative for a reduction in sentence pursuant to Rule 35.[1] In seeking a new trial, she primarily challenged the reliability of the trial testimony of Francis "Mickey" Featherstone, which had implicated her in the murder of Vincent Leone. The reliability of that testimony was undermined, she asserted, by statements recently made to state authorities by co-defendant James McEl-

Vivian Shevitz, New York City, for defendant.

Otto G. Obermaier, U.S. Atty. by David E. Brodsky, Chief Appellate Atty., and Mary Lee Warren, Chief, Narcotics Unit, New York City, for the U.S.

---

1. She also sought an adjournment of her surrender date until the motion for a new trial and for a reduction of sentence was decided. That application was denied on December 8.

roy. The request for a reduction of sentence also was predicated on these "new developments," which, she claimed, rendered suspect "the basis on which the Court ordered [defendant] incarcerated for a fifteen-year term." In the event that a new trial would not be granted, she requested leave "to submit supplemental papers, if necessary demonstrating why [she] is at least entitled to a substantial reduction in sentence."

On December 13, 1989, the government submitted its initial opposition. Soon thereafter I became aware of the possibility that McElroy would be called by the State of New York to testify in the upcoming trial of John Gotti, and that such testimony might impact on the pending motions. In the interest of resolving the motion on a more complete record, I deferred ruling on it, adjourning without date the time for submission of Edna Coonan's supplemental papers.

Chambers were closed for most of the month of January, during which time the state trial—at which McElroy did indeed testify—took place. In response to an inquiry from Chambers in early March, defense counsel, because of both professional and personal commitments, sought and was granted until May 18 to file supplemental submissions. By letter dated May 8, counsel requested a three-week extension until June 8, which was granted. On June 8, counsel filed a supplemental declaration. That declaration iterated the request for oral argument and sought to support the original contention—that Featherstone's testimony was unreliable—in light of, *inter alia*, McElroy's testimony at the Gotti trial. Annexed to the declaration was a transcript of McElroy's testimony.

By letter dated July 26, Assistant United States Attorneys David E. Brodsky and Mary Lee Warren responded to Edna Coonan's supplemental submission as well as the motions for reduction of sentence which had been filed by co-defendants McElroy, Richard Ritter, and Thomas Collins. By letter dated August 2, defense counsel re-asserted the position that "the Court's confidence in what Mickey Featherstone had to say ... may be shaken ... at least enough to suggest that leniency for this otherwise rehabilitatable offender may be warranted."

On August 3, in conformity with my usual practice of taking such motions on submission, I issued a decision denying the motion in its entirety. I concluded that "the various statements of James McElroy cast no doubt either on the validity of the conviction or on the propriety of the sentence." Memorandum & Order of August 3, at p. 1. With respect to the application to reduce the fine, I noted the absence in the moving papers of any "flat statement (on information and belief or otherwise) that Edna Coonan could not pay the fine tomorrow if she wanted to." *Id.*

One week later, on August 10, defendant filed an application for reconsideration of the motion, reiterating her request for oral argument. By letter of the same date, the government opposed the application for reargument—in so far as it sought a reduction of sentence—on the ground that it was untimely and that the court was therefore without jurisdiction to hear it. The parties have since submitted letter-briefs on the question of whether or not the court has jurisdiction to entertain the application for reconsideration of the request for Rule 35 relief.

## DISCUSSION

*Jurisdiction to Entertain the Application for Reconsideration.*

■ Citing *U.S. v. Addonizio* (1979) 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805, *U.S. v. U.S. District Court* (9th Cir.) 509 F.2d 1352, *cert. denied, sub nom. Roselli v. U.S.* (1975) 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448, *U.S. v. Dansker* (3d Cir. 1978) 581 F.2d 69, *U.S. v. Inendino* (7th Cir.1981) 655 F.2d 108, *U.S. v. Hetrick* (9th Cir.1980) 644 F.2d 752, *In re U.S.* (5th Cir.)

900 F.2d 800, *cert. denied, sub nom. Tapp v. U.S.* (1990) —— U.S. ——, 111 S.Ct. 271, 112 L.Ed.2d 227, and *U.S. v. Badr* (E.D.N.Y.1987) 666 F.Supp. 37, the government contends that this court is without jurisdiction to entertain the instant application in so far as it seeks reconsideration of its denial of the Rule 35 motion because the application was filed after the 120–day time limit set forth in that Rule. Defendant's response to the government's contention in this regard is primarily based on Judge Haight's opinion in *U.S. v. Lichtman* (S.D.N.Y. Nov. 21, 1983), 1983 WL 4615.

The Rule, as amended in 1985 and as here applicable, provides in pertinent part:

A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed ... or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court shall determine the motion within a reasonable time.

Fed.R.Crim.P. 35(b). The Rule's underlying objective "is to 'give every convicted defendant a second round before the sentencing judge, and [afford] the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim.'" Advisory Comm. Notes to 1983 Amendment (quoting *U.S. v. Ellenbogen* (2d Cir.) 390 F.2d 537, 543, *cert. denied,* (1968) 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206).

Prior to its 1985 amendment, the Rule did not state whether or not a district court could act upon a timely filed motion after the 120–day period had expired. In dictum, the Supreme Court had indicated that it could not, *i.e.* that the Rule only "autho-

rizes District Courts to reduce a sentence within 120 days" and that this time period "is jurisdictional, and may not be extended." *U.S. v. Addonizio* (1979) 442 U.S. 178, 189, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805. It is in part upon this dictum [2] that the government now relies.

However, as the Advisory Committee Notes make clear, the 1985 amendment was intended to conform the rule's "language to the nonliteral interpretation which most courts have already placed upon the rule, namely, that it suffices that the defendant's motion was made within the 120 days and that the court determines the motion within a reasonable time thereafter." The Committee noted that the "change in the language [was] deemed desirable to remove any doubt which might arise from dictum in some cases, e.g., *United States v. Addonizio* ..., that Rule 35 only 'authorizes District Courts to reduce a sentence within 120 days' and that this time period 'is jurisdictional, and may not be extended.'" Advisory Comm. Notes to 1985 Amendment. It would appear that the Committee Notes undermine the government's reliance upon *Addonizio.*

Turning to the other cases upon which the government relies, none of them required the court to consider the question here presented: whether or not, once the 120–day period has expired, a district court may entertain a prompt motion for reconsideration of a denial of a timely Rule 35 motion.

In two of these cases, there simply was no application for reconsideration before the court. Both instead addressed the question of the district court's authority to act upon an original Rule 35 motion that was not timely filed. Thus, in *U.S. v. U.S. District Court* (9th Cir.) 509 F.2d 1352, *cert. denied, sub nom. Roselli v. U.S.* (1975) 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448, the Ninth Circuit granted the government's petition for a writ of manda-

---

**2.** In *Addonizio,* the Court was concerned solely with whether post-sentencing changes in the policies of the United States Parole Commission provided a basis under 28 U.S.C. § 2255 for collateral attack of an original sentence. On the facts before it, it had no occasion to examine the question now before us, namely whether a district court has jurisdiction to entertain a motion for reconsideration which, although promptly filed after the denial of a timely Rule 35 motion, was filed after the 120–day period had expired.

mus compelling the district court to vacate its orders reducing the fines of two defendants; neither defendant's Rule 35 motion had been filed within the 120–day period. *Id.* at 1355–56. In *U.S. v. Dansker* (3d Cir.1978) 581 F.2d 69, the defendant timely moved for and was denied both a new trial and a reduction of sentence. Within 120 days of his unsuccessful appeal of those determinations but more than 120 days after the Supreme Court had denied *certiorari* with respect to his direct appeal, the defendant filed a second Rule 35 motion which the district court denied as untimely. The Third Circuit affirmed, noting that the 120–day period was triggered by the denial of *certiorari*, and not by the completion of the proceedings on the new trial motion. *Id.* at 74.

In the remaining four cases, unconscionable delay had elapsed between the denial of the original Rule 35 motion and the application for reconsideration. In *U.S. v. Inendino* (7th Cir.1981) 655 F.2d 108, the Seventh Circuit affirmed the district court's refusal to consider new evidence that had been submitted with a motion for reconsideration filed some 42 days after the initial Rule 35 motion had been denied. In *U.S. v. Hetrick* (9th Cir.1980) 644 F.2d 752, the district court had reduced the defendant's sentence after granting a motion for reconsideration *of a motion for reconsideration* that earlier had been denied because it was filed after the 120–day period had expired. The Ninth Circuit reversed, noting that the second motion for reconsideration had not been filed until almost 9 months after the district court had issued its decision on the original Rule 35 motion. In *In re U.S.* (5th Cir.) 900 F.2d 800, *cert. denied, sub nom. Tapp v. U.S.* (1990) — U.S. ——, 111 S.Ct. 271, 112 L.Ed.2d 227, the Court of Appeals granted the government's petition for a writ of mandamus compelling the district court to vacate its orders reducing the sentences of two defendants. With respect to the first defendant, the district court, apparently acting upon a supplemental submission received 11 months after its denial of a timely filed Rule 35 motion, had reduced the defendant's sentence to time served. With re-

spect to the second, the district court, "apparently acting *sua sponte,*" had granted similar relief twenty months after denying a timely filed Rule 35 motion. *Id.* at 802. In *U.S. v. Badr* (E.D.N.Y.1987) 666 F.Supp. 37, Judge Glasser, in denying as untimely the defendant's motion for reconsideration, expressly declined to answer the question here presented because the motion had been filed more than a year and one-half after the Rule 35 motion had been denied. *Id.* at 38 (noting Judge Haight's opinion in *United States v. Lichtman* ).

Still, language in at least two of the aforementioned courts of appeals opinions supports the government's general contention that a district court is without jurisdiction to entertain a motion for reconsideration filed after the 120–day period has expired. Thus, in *In re U.S.,* the Fifth Circuit stated that "federal district courts have no jurisdiction to entertain motions for reconsideration of a Rule 35 denial of relief, unless the motion to reconsider is filed within 120 days from the date the conviction becomes final." 900 F.2d at 804. In *Hetrick,* the Ninth Circuit noted that:

> the timely filing of a Rule 35 motion does not give a district court jurisdiction to entertain subsequent untimely Rule 35 motions. The second motion will not be deemed to relate back to the first motion. Nor is the jurisdictional defect cured by styling the subsequent motion as a 'motion for reconsideration.'

644 F.2d at 756 (citations omitted).

The Ninth Circuit recently applied this same rule against the government which sought reconsideration of a Rule 35 motion that had been granted. In *U.S. v. Stump* (9th Cir.1990) 914 F.2d 170, a decision rendered while the instant motion was *sub judice,* the government filed a motion for reconsideration, seeking reinstatement of the defendant's original sentence which had been reduced one week earlier upon a timely-filed Rule 35 motion. The government prevailed initially, but the Court of Appeals reversed. It reasoned that, because of the jurisdictional nature of the 120–day time limit, the district court had had no authority to entertain the govern-

ment's motion which had been filed more than five months after the 120–day period was triggered. *See id.* at 172.

The government has not cited, nor has independent research revealed, any Second Circuit decision which addresses this issue or any considered opinion from our district that denies as untimely a prompt motion for reconsideration solely because it was filed after the 120–day period had expired.[3]

On the other hand, defense counsel has cited an unreported decision from our district which departs from the view apparently shared by the Fifth and Ninth Circuits. In *U.S. v. Lichtman* (S.D.N.Y. Nov. 21, 1983) Dkt. No. 81 Cr. 849, three defendants sought—after the 120–day period had expired—reconsideration of the denials of their timely-filed Rule 35 motions. They contended that the court had failed fully to consider their post-conviction cooperation with the trustee who was appointed to handle the financial complications that arose from the frauds of which the defendants had been convicted. After making specific inquiries of the trustee with respect to the cooperation of each defendant, Judge Haight reduced the sentences of all three defendants. The government asserted, as it does here, that the court lacked jurisdiction to effect any reduction of sentence because the 120–day period had expired. Judge Haight rejected that challenge, reasoning that:

> [i]f a court may decide a Rule 35 motion outside the 120–day limitation, it follows that the court may, in response to a prompt request, reconsider its decision. The request must be made with reasonable promptness, and the court must rule on the request within a reasonable time, after conducting such additional inquiry as seems appropriate in the circumstances.

*Id.* at 2. The government took no appeal from the decision.

In assessing this apparent conflict, one must consider the principles which underlie

the Rule and the application of the 120–day limit in the above-discussed decisions. As was noted at the outset, Rule 35 was intended to provide the sentencing judge with an opportunity to reconsider the sentence imposed in light of new evidence not available at the time of sentencing. *See* Advisory Comm. Notes to 1983 Amendment; *see also U.S. v. Ellenbogen* (2d Cir.) 390 F.2d 537, 543, *cert. denied,* (1968) 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206; *Inendino, supra,* 655 F.2d at 110. As articulated by the Seventh Circuit, the purpose of the 120–day limit is "to protect the district court from recurrent requests from defendants to reconsider their sentence and to prevent the courts from becoming an alternative to the Parole Commission as a means of release from custody." *Inendino,* 655 F.2d at 109. Thus, "[t]he time limit ... mediates between competing aims: the time must be long enough to allow the judge to reduce a sentence if he is so disposed, and it must be short enough that the judge's power does not duplicate the discretion of the Parole Commission." *U.S. v. Kimberlin* (7th Cir.1985) 776 F.2d 1344, 1347, *cert. denied,* (1986) 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697; *see also U.S. v. Counter* (5th Cir.1981) 661 F.2d 374, 376.

Bearing these principles in mind, in the particular circumstances of this case the expiration of the 120–day period did not divest the court of jurisdiction to entertain the application for reconsideration. It is apparent that defendant is not here seeking to evade a jurisdictional defect by styling a subsequent Rule 35 motion as a motion for reconsideration. *See Hetrick, supra.* In fact, by the instant application, defendant asks us first and foremost to reconsider the very issue upon which the original Rule 35 motion was based, *i.e.* the reliability of Featherstone's inculpatory testimony in light of new evidence which was not available at the time of sentencing, namely, certain post-trial statements made by co-defendant McElroy. Furthermore, in light of

**3.** In *U.S. v. Rincon* (S.D.N.Y. July 15, 1988) Dkt. No. 87 Cr. 200, 1988 WL 78370, Judge Lowe denied the defendant's motion for reconsideration because it was received after the 120–day period had expired. It is not apparent from the opinion whether or not there was inordinate delay in filing the motion.

the fifteen-year term of defendant's sentence and her relatively recent commitment, the possibility at this time of duplicating the discretion of the Parole Commission is indeed slim. Finally, the expiration of the 120–day period was occasioned in no small part by defendant's desire—which, in the interests of fairness and judicial economy, I shared—to have the motion decided on a full record.

Accordingly, the application for reconsideration is granted.

*The Merits.*

(A) The Request to Reduce the Fine

■ There are two prongs to the application to reduce the fine: (i) that Edna Coonan has no resources with which to pay it; and (ii) that its imposition is materially worsening the conditions of her confinement. To prevail on this application, she must establish both prongs. Without the second, there would be no reason to sidetrack the usual procedure of letting any claim of inability to pay be adjudicated pursuant to 18 U.S.C. § 3569 when her release is imminent.

Defendant's original papers set forth a variety of purported hardships resulting from the fine. The government responded with rather convincing arguments to the effect that the existence of the fine had no material effect on the condition of her confinement. This motion for reargument makes no reference to this dispute. On the contrary, it notes that the question whether or not "the fine imposed on Edna Coonan is vacated ... is ... in fundamental respects the least of the issues before the Court." Shevitz Rearg. Declar. at ¶ 7.

(B) The Application for a New Trial or in the Alternative to Reconsider the Term of Imprisonment

■ The application for a new trial or in the alternative to reconsider the term of imprisonment is based on the contention that subsequent statements by co-defendant McElroy so undermined the credibility of the witness Featherstone with respect to Edna Coonan's involvement in the Vincent Leone murder that justice requires a reconsideration of the verdict against her and of the sentence imposed thereon. As the government properly observes, to prevail upon such an application defendant would have to establish that she would have had at least some chance of acquittal had McElroy been available to her at the time of trial. The short answer to any such contention is that no rational defense attorney would have put McElroy on the witness stand had he been available.

In the State action against Gotti, McElroy testified on cross examination about Edna Coonan's involvement in the Vincent Leone murder:

Q: Well, you told us Edna Coonan gave you—

A: That was Jimmy's wife.

\* \* \* \* \* \*

Q: She brought the tape to you before Lioni [sic] was killed, right?

A: Right.

\* \* \* \* \* \*

Q: And she told you to kill him, right?

A: Yes.

CONCLUSION

■ As noted above, Edna Coonan's application for reconsideration is granted. Upon such reconsideration, it is apparent that no aspect of her motion has merit and it is denied. However, for reasons that follow, her sentence is modified to provide that it is imposed pursuant to 18 U.S.C. § 4205(b)(2), and, in accordance therewith, I specify that she may be released on parole at such time as the Parole Commission may determine.

It is obvious to me—as it must be to anyone familiar with the trial record—that substantial sums of cash were accumulated by James and Edna Coonan in the course of their criminal enterprise. If those sums have not been dissipated, they are still available. If they have been dissipated, the Coonans would have no motive to conceal that fact. On the contrary, they would have every motive to establish it. Moreover, they could easily produce witnesses who could explain, subject to appropriate cross examination, where the money had originally been hidden and how it had been

dispersed. If, on the other hand, the funds are still available, the Coonans would have every motive to conceal them unless they were prepared to have them forfeited to the government.

At the time of sentence, presented with apparently sincere statements by both Coonans that their primary concern was the welfare of their children, I had hoped that they might realize that such welfare would best be promoted by the soonest possible reunion between the children and their mother, rather than by preserving for the children the luxury—and guilt—of living off the proceeds of their parents' crimes. Accordingly, after imposing upon Edna Coonan the minimum prison sentence I thought justified in light of her role in the criminal enterprise, I made clear that I was prepared to reduce that sentence should she (and necessarily her husband) cooperate in revealing the whereabouts of the proceeds of her criminal activity.[4]

My sentiments are still the same. However, my powers are quite different. I now have no authority to reduce Edna Coonan's sentence on the basis of anything she or her husband may do in the future. I can only confer such power upon the Parole Commission, which I now do by the above-noted modification of her sentence.

SO ORDERED.

## ADDENDUM

After the preceding memorandum and order was drafted, it was circulated among counsel for their views on my decision—which they may not have anticipated—to modify Edna Coonan's sentence by employing 18 U.S.C. § 4205(b)(2). It is apparent from their responses that both sides have misinterpreted the purpose of that decision, in that they seem to view it as an offer of leniency to Edna Coonan. Thus, the government notes that making the defendant immediately eligible for parole confers upon her "a benefit that most federal prisoners do not enjoy." The defendant, on the other hand, contends that it is unjust to condition such "benefit" on the actions of her husband.

The fact of the matter is that leniency to Edna Coonan was no part of my purpose. As I tried to make clear both at the time of sentence and in my present memorandum and order, I thought and still think that the sentence imposed is the least possible punishment appropriate for the crimes of which she was convicted. She continually asserts—through her counsel—that all her actions were performed at her husband's behest. While this may be an explanation for her conduct, it is no justification either legally or morally.

Simply stated, my purpose in employing 18 U.S.C. § 4205(b)(2) is to further the objective of the RICO statute's forfeiture provision, 18 U.S.C. § 1963, pursuant to which the proceeds of the "Westies" enterprise are, as they have been since the commission of that enterprise's offenses, the prop-

---

**4.** My statements in imposing sentence on Edna Coonan included the following:

Also, I am going to impose a $200,000 fine on the general theory that I mentioned before and I would point out to you that in my judgment, I can be wrong, all I can do is tell you what I think, in my judgment you have it in your power to lead the government to where that money is.

Now, I am not penalizing you for not doing it, but I point out to you that it is an avenue that you could use for an application for a reduction of sentence should you do so.

You and your husband and your counsel have asked me to take into consideration the effect of your sentence on your children and that's really not my field, but your having asked me I've got to think about it and I am impressed with the fact that your children, as you tell me, have been ostracized by their peers because their parents apparently don't want them to associate with your children because of who their father is.

That's something they are going to have to deal with. Now, if they deal with it—children know much more than we think they know— if they deal with it with the knowledge that they are heirs and beneficiaries of the money that was earned in the manner that has been described in this trial, they are going to have a very hard time disassociating themselves with this ostracism.

It would be to the benefit of your children if I am correct that you do know and can lead to the money and that you do so. Money is a good thing to have, but I am not sure it is good for your children if they know where it came from.

Transcript of Sentencing, May 11, 1988, at pp. 155–57.

erty of the United States. In this connection, it would seem to me too high a price to pay for the achievement of that objective to offer defendant James Coonan a reduction in his sentence. However, it seems to me—as it may or may not seem to the Parole Commission—that in light of Edna Coonan's lesser involvement it would not be inappropriate to offer defendant James Coonan a reduction in his wife's sentence should he decide to cooperate in this endeavor.

The government, apparently sharing my view that the likelihood that James Coonan will accept this offer is small indeed, objects to the conferral of any further discretion upon the Parole Commission. I do not believe the government's concern is warranted. I am advised that, under the Commission's applicable guidelines, Edna Coonan would not be eligible for release until after the expiration of the five-year minimum established by the original sentence; and that invocation of § 4205(b)(2) would, under the Commission's practice and procedures, have no effect on the application of those guidelines. While the Commission has discretion to depart from those guidelines (and, as the government observes, will now be able "immediately" to reduce her sentence to time served), I can perceive no reason for supposing that it would exercise its discretion in any but an appropriate fashion.