MARTIN, Circuit Judge,
joined by WILSON and JORDAN, Circuit Judges, dissenting:
The majority and dissenting opinions issued by the court today set out the academic debate over the scope of relief provided by 28 U.S.C. § 2255 to prisoners now in federal prisons, based on incorrect sentences mistakenly imposed by federal judges. I write separately to talk about Kevin Spencer, and what has happened to him as a criminal defendant who came into federal court in 2007.
I.
At the age of 21, Mr. Spencer walked into a federal courtroom in Jacksonville, Florida, and pleaded guilty to one count of distributing crack cocaine, a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). - Specifically, Mr. Spencer admitted to selling a “cooperating individual two pieces of crack cocaine in exchange for $20.” The crack weighed less than a gram. And as the majority opinion extensively recounts, this 2007 conviction was not Mr. Spencer’s first brush with the law. His earlier legal problems included another conviction for selling cocaine, from when he was 17 years old. Also, at the age of 18, Mr. Spencer pleaded guilty in state court to felony child abuse, under Florida Statute § 827.03.
Because the federal sentencing scheme is set up to cause those who have a violent past to serve longer sentences, the nature of Mr. Spencer’s earlier criminal problems was highly relevant. Before his sentencing hearing in federal court, Mr. Spencer got notice that the presentence report prepared for the judge characterized his felony child abuse conviction as a “crime of violence.”
The 2006 Guideline Manual, used for Mr. Spencer’s sentencing, defines a crime of violence to include a state crime, punishable by a term of more than a year, that “has as an element the use, attempted use, or threatened use of physical force against the person of another” or “is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” United States Sentencing Guidelines (USSG) § 4B1.2(a)(l)-(2) (2006). Mr. Spencer argued to his sentencing court that his felony child abuse conviction, which arose out of his relationship with a female four years his junior, did not meet this definition. At the time of Mr. Spencer’s 2007 sentencing, the government took the contrary view, and argued to the sentencing court (quite extensively) that Mr. Spencer’s felony child abuse conviction was a violent crime.
In keeping with the government’s 2007 argument that Mr. Spencer’s earlier conviction for felony child abuse was a crime of violence, the District Court overruled Mr. Spencer’s objection and sentenced him as a “career offender.” See USSG § 4B1.1. Under the U.S. Sentencing Guidelines, this designation put him into “a category of offender subject to particularly severe punishment.” Buford v. United States, 532 U.S. 59, 60, 121 S.Ct. 1276, 1278, 149 L.Ed.2d 197 (2001). That is because the career offender guideline was created by a congressional directive that required the U.S. Sentencing Commission to set guideline ranges “at or near the maximum” authorized by statute for certain defendants who have two or more prior convictions for crimes of violence or drug trafficking offenses. See 28 U.S.C. § 994(h). Just as Congress intended, the *1150 career offender guideline had a profound effect on Mr. Spencer’s sentence.
For Mr. Spencer, his career offender status got him a sentence nearly twice as long as would otherwise be imposed. The District Court said as much at the time of sentencing, stating:
Mr. Spencer, had you not had that career — career offender enhancement, instead of looking at a level 32, you’d have been looking at a level 23.[1] It’s, in essence, half the sentence, in essence.
So you’re paying a big price today for your record. What happens under the sentencing guidelines when you commit some of the crimes that you have committed, the sentencing guidelines come down hard on people, and they come down hard on people for a reason.
Mr. Spencer’s non-career offender guideline range was 70 to 87 months based on the total amount of drugs involved in his offense, his criminal history, and his acceptance of responsibility.[2] His career offender guideline range was 151 to 188 months. Mr. Spencer was sentenced to 151 months. Assuming a low-end guideline sentence, this is an 81 month (6 % years) difference. Mr. Spencer’s expected release date from his 151 month sentence is September 18, 2017. See Bureau of Prisons Inmate Locator, http://www.bop. gov/inmateloc/. If he had been sentenced without the enhancement for a violent crime (i.e., not as a career offender), he would no longer be serving time in the federal penitentiary.
II.
Since 2007, when Mr. Spencer was first labeled a career offender, he has effectively been punished twice again for that status. As discussed, his sentence was imposed on August 16, 2007. The U.S. Sentencing Commission has lowered the guideline ranges for defendants convicted for crack cocaine offenses two times since that date. First, on November 1, 2007, the Commission issued Amendment 706, which lowered the crack sentencing guidelines for most crack offenses by two levels based on drug quantity. See USSG App. C, Amend. 706 (2007).. The Commission put Amendment 706 in place, effective March 3, 2008, not only for those who would be convicted of crack offenses in the future, but also for those who were already serving sentences for crack crimes. See USSG App. C, Amend. 713 (Supp. May 1, 2008). This allowed some offenders who had been convicted of crack offenses before November 1, 2007, to get a two level reduction in their sentence pursuant to 18 U.S.C. § 3582(c)(2). See id. *1151 (listing Amendment 706 under USSG § 1B1.10(c) as a retroactively applicable amendment). But Mr. Spencer was not eligible for a sentence reduction under Amendment 706 because he had been sentenced as a career offender. See United States v. Moore, 541 F.3d 1323, 1330 (11th Cir.2008) (holding that Amendment 706 does not apply to defendants who were sentenced as career offenders). If Mr. Spencer had not been sentenced as a career offender, his sentencing range could have been reduced to 51 to 71 months.[3]
Then, in 2010, Congress enacted the Fair Sentencing Act, which became effective on August 3, 2010. Fair Sentencing Act of 2010(FSA), Pub.L. No. 111-220 § 2(a), 124 Stat. 2372 (2010). The FSA “reduc[ed] the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1.” Dorsey v. United States, — U.S. -, -, 132 S.Ct. 2321, 2326, 183 L.Ed.2d 250 (2012). The FSA was Congress’ response to nearly two decades of criticism from the “Commission and others in law enforcement community” about “Congress’ decision to set the crack-to-powder minimum ratio at 100-to-1.” Id. at -, 132 S.Ct. at 2328; see also id. at ---. 132 S.Ct. at 2328-29 (citing four separate Sentencing Commission reports telling Congress that the ratio was “too high and unjustified”). Among other things, Commission research showed “the relative harm between crack and powder cocaine less severe than 100-to-1” and “the public had come to understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences.” Id. at -, 132 S.Ct. at 2328. In section 8 of the FSA, Congress directed the Commission to promulgate conforming emergency guideline amendments to implement the Act. See FSA § 8, 124 Stat. at 2374. The Commission did just that through temporary Amendment 748, which once again lowered-the base offenses (and therefore the sentences) for crack cocaine offenses in the Drug Quantity'- Table in USSG § 2D1.1(c), effective November 1, 2010. See Supp. to the 2010 Guidelines Manual, Amend. 748 (Nov. 1, 2010). This amendment was made permanent by Amendment 750 and retroactively applicable by Amendment 759. See USSG App. C, Amends. 750, 759 (2011).
Under Amendment 750, Mr. Spencer’s sentencing guidelines range would have been reduced to 24 to 30 months.[4] So now we know that Mr. Spencer’s 151-month career offender sentence is at least six times the low end of the guideline range he would receive if he were sentenced today with the full benefit of these reductions in the crack sentencing guidelines. But once again, Mr. Spencer was not eligible for a sentence reduction under Amendment 750 because he had been designated a career offender back in 2007. See United States v. Lawson, 686 F.3d 1317, 1321 (11th Cir.2012) (per curiam); see also Moore, 541 F.3d at 1327, 1330.
III.
We also now know that Mr. Spencer’s argument at the time of his sentencing that he was not a career offender was *1152 prescient. Since he made that argument at his sentencing hearing, the Supreme Court has schooled us all about how to decide whether a federal defendant’s prior state conviction should be counted as a violent felony.[5] Based on this teaching, the government has come to agree with the argument made by Mr. Spencer’s counsel back in 2007 — that Spencer’s felony child abuse conviction is not a crime of violence.
I believe the federal courts as an institution would be stronger if we simply acknowledge that we got Mr. Spencer’s sentence wrong from the start, and fix it. The government now concedes that, contrary to its argument to Mr. Spencer’s sentencing court in 2007, he had no prior crime of violence conviction at the time he was sentenced. But the government nevertheless urges this Court to lay the burden of its mistaken 2007 argument upon Mr. Spencer. The majority of this Court has done just that. So Mr. Spencer will continue to serve an extra many years of a mistaken sentence, even though he has been right about how we got his sentence wrong from the start.
The Antiterrorism and Effective Death Penalty Act of 1996 allows one Section 2255 petition to be brought as a matter of right. For Mr. Spencer, this is it. This Court has spent a lot of time talking about the limitations on a federal inmate’s ability to get relief by way of a second or successive petition under Section 2255(h).[6] But those opinions do not govern Mr. Spencer’s case. This is his first petition. The government recognizes (and the majority agrees) that the Supreme Court has never gone as far as it asks us to go in denying relief based on a first petition. More to the point, the government acknowledges that the Supreme Court has never said that so-called Sentencing Guideline errors are beyond the reach of the relief offered by § 2255. And on that point, it cannot be denied that the Supreme Court has allowed a federal prisoner to use a § 2255 petition to reduce his sentence where his prior conviction, used to support his career offender enhancement, was vacated. See Johnson v. United States, 544 U.S. 295, 303, 125 S.Ct. 1571, 1577, 161 L.Ed.2d 542 (2005) (“[A] defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated.”). This is part of what makes the majority opinion so hard to understand. It punishes Mr. Spencer for a mistake we made in sentencing him when neither Supreme Court precedent nor the plain language of § 2255 requires this result. Indeed, Judge Rosenbaum is persuasive in her view that Johnson requires the result *1153 opposite of that reached by the majority here.
IV.
I can think of no good reason not to give Mr. Spencer his correct sentence. He timely objected to his career offender designation at the time he was sentenced. And on direct appeal, Mr. Spencer again pressed his argument that he should not have been classified as a career offender. See United States v. Spencer, 271 Fed.Appx. 977, 977-78 (11th Cir.2008) (per curiam). We affirmed his career offender classification. Id. at 978. A little more than six months later, Mr. Spencer filed his first § 2255 motion to vacate and correct his sentence — which is the subject of this appeal — in which he argued that he is not a career offender because his prior conviction for child abuse is not a crime of violence based upon the Supreme Court’s intervening decision in Begay. There is no procedural obstacle preventing our granting habeas relief to Mr. Spencer such as a procedural default, statute of limitations problems, or even retroactivity concerns. Despite all of this, the Majority concludes that Mr. Spencer cannot challenge the sentencing error in his first § 2255 petition unless “he is either actually innocent of his crime or ... a prior conviction used to enhance his sentence has been vacated.” Maj. Op. at 1138.
It seems to me to draw an arbitrary line to say (on the one hand) that a prisoner may use § 2255 to collaterally attack his career offender status if that prior conviction has been vacated, see Majority Op. at 1138 (citing Johnson, 544 U.S. at 303, 125 S.Ct. at 1577), but not (on the other) if that same prior conviction was never a qualifying conviction in the first place — in light of an authoritative statutory interpretation by the Supreme Court. For the defendant in both situations, we know with certainty he is not a career offender. And assuming similarly situated defendants, we also know that his career offender sentence is below the statutory maximum, with the District Court therefore having discretion to resentence the defendants to the same sentence which was mistakenly imposed to begin with. For both defendants we know, because of what happened later, that the District Court dropped the anchor of its sentencing analysis in the wrong place. See Peugh v. United States, — U.S. -, -, 133 S.Ct. 2072, 2084, 186 L.Ed.2d 84 (2013) (recognizing the Sentencing Guidelines remain the “lodestone of sentencing” “even after Booker rendered [them] advisory”). I recognize that the Majority makes a distinction between these two types of defendants, i.e., legal and factual innocence, see Majority Op. at 1142, but this distinction is nowhere found in § 2255.
Indeed, it may be that the balance of equities favors granting habeas relief to people like Mr. Spencer — as between the two. Where a prior conviction has been vacated by a state court after a defendant was sentenced in federal court, that defendant was properly characterized as a career offender at the time he was sentenced. The burden is on him to come back into federal court with proof that his later vacated prior conviction should not have been used to enhance his federal sentence. For Mr. Spencer, he was wrongfully characterized as a career offender from the day his sentence was imposed. That is because we now have “an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.” Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 & n. 12, 114 S.Ct. 1510, 1519 & n. 12, 128 L.Ed.2d 274 (1994); see also Bunkley v. Florida, 538 U.S. 835, 840-42, 123 S.Ct. 2020, 2022-24, 155 L.Ed.2d 1046 (2003); Fiore v. White, 531 *1154 U.S. 225, 226, 121 S.Ct. 712, 713, 148 L.Ed.2d 629 (2001).
I fully understand that finality is an important consideration in deciding the scope of collateral relief in § 2255 proceedings. But Mr. Spencer also has an important interest in correcting a wrongfully imposed sentence. I had an earlier occasion, in the context of a second or successive habeas petition, to review the reasons given in support of finality in sentencing. Those reasons include:
(1) to build confidence in the integrity of the judicial system; (2) to minimize administrative costs and delay; (3) to avoid spoliation of evidence; and (4) to honor comity. See United States v. Addonizio, 442 U.S. 178, 184 n. 11, 99 S.Ct. 2235, 2240 n. 11, 60 L.Ed.2d 805 (1979); see also Paul M. Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 451-53 (1962).
Gilbert, 640 F.3d at 1334 (Martin, J., dissenting). None of these values compel our decision today.
In the intervening years since this Court decided the Gilbert case, I have gained no insight into how insisting on the finality of a sentence that was calculated based on a judge-made mistake instills confidence in the courts. I cannot imagine what words might explain to Mr. Spencer (or those who care about him) why the courts of this great nation are impotent to fix a mistake we made in formulating his sentence. This is particularly true when he has told us about the mistake since the day we made it, and it is a mistake now acknowledged by even his adversary.
Now after close to five years pending in this Court (not counting the time in district court), with enormous resources already devoted to Mr. Spencer’s case, no one can make a straight-faced argument that denying Mr. Spencer relief will save administrative costs or minimize delay. I hear the idea that today’s ruling will save costs and delay for cases we consider in the future. But the judicial branch of government is the one where people come into court, like Mr. Spencer did here, seeking justice for their own individual case. It is not the role of the courts to enact rules of sweeping administrative convenience.
Most provocative for me (as to this reason given in support of finality) is that today’s ruling will increase costs in the criminal justice system to the extent that the U.S. taxpayer will have to spend dozens of thousands of dollars incarcerating Mr. Spencer for time he should not be in prison. At oral argument, the government was not able to identify a single law enforcement purpose served by keeping Mr. Spencer in jail for years beyond what his sentence should rightfully have been. When asked about the existence of a law enforcement purpose for Mr. Spencer’s continued incarceration, the government responded:
I can’t speak to Mr.... I don’t know his-personal record. I don’t know, you know, there is no information in the record about how he has behaved or whether he needs, you know, additional.... I can’t speak to that. That would be speculating beyond the record. But what I can say is there are systemic interests in keeping individuals, not just Mr. Spencer, but all the similarly situated individuals....
This seems important for two reasons. First, Attorney General Eric Holder has said that “[t]oo many Americans go to too many prisons for far too long, and for no truly good law enforcement reason.” Attorney General Eric Holder, Remarks at the Annual Meeting of the Amer. Bar Assoc. House of Delegates (Aug. 12, 2013) (transcript available at http://www.justice. *1155 gov/iso/opa/ag/speeches/2013/ag-speeeh130812.html); see also Douglas A. Berman, Symposium, Re-Balancing Fitness, Fairness, and Finality for Sentences, 4 Wake Forest J.L. & Pol’y 151, 176 (2004) (arguing that “modern mass incarceration in the United States now calls for policy-makers, executive officials, and judges to be less concerned about sentence finality, and more concerned about punishment fitness and fairness when new legal developments raise doubts or concerns about lengthy prison sentences”). Second, career offender sentences are among the most severe sentences imposed, so it makes sense to be sure they are given only to those deserving of this designation. See Amy Baron-Evans, Jennifer Coffin & Sara Silva, Deconstructing the Career Offender Guideline, 2 Charlotte L.Rev. 39, 40-41 (2010) (citing United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, at 133-34 (2004)). By denying Mr. Spencer relief today, we lavishly spend U.S. taxpayer money and resources for no law enforcement purpose that I know of.
In terms of other reasons supporting finality, there is no issue about spoliation of evidence here. As one scholar aptly put it, “records.of convictions do not go ‘stale’ in the way that witnesses and some types of physical evidence may.” Sarah French Russell, Reluctance to Resentence: Courts, Congress, and Collateral Review, 91 N.C. L.Rev. 79, 153 (2012). Mr. Spencer has been and will remain convicted of this crime for which he is incarcerated. There are no disputed facts left for us to decide in his case. See generally Meghan J. Ryan, Symposium, Finality and Rehabilitation, 4 Wake Forest J.L. & Pol’y 121, 135-37 & n. 92 (2014) (noting that “scholars have suggested that traditional interests underlying the finality doctrine have significantly less relevance in the sentencing context”). Today, the only question before us is whether to end his sentence now or leave it to run into the future. And finally, there is no issue of comity here. Mr. Spencer is serving a federal sentence imposed in federal court. We review our own mistake, and there is no state act requiring our deference.
Y.
When 28 U.S.C. § 2255 became law, it was challenged as an unconstitutional suspension of the writ. Of course, the United States Constitution protects the writ of habeas corpus, providing that “The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” U.S. Const. Art. I, § 9, cl. 2. The Supreme Court turned back the challenge against 28 U.S.C. § 2255, holding that the statute was as broad as the writ of habeas corpus. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). And the Supreme Court has continued since that time to “emphasize! ] the fundamental importance of the writ of habeas corpus in our constitutional scheme.” Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). Indeed, the Supreme Court has “constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme” and “steadfastly insisted that there is no higher duty than to maintain it unimpaired.” Id. (quotation marks omitted). I believe today’s decision by the Majority fails to carry out this important duty.
I respectfully dissent from the denial of relief to Mr. Spencer.

. I understand the District Court to be comparing Mr. Spencer's career offender base offense level without deductions for acceptance of responsibility (offense level 32) to his noncareer offender base offense level with a three-level reduction for acceptance of responsibility (offense level 23).

. Although Mr. Spencer’s conviction was for the sale of .06 grams of crack cocaine, he was punished for 5.5 grams of crack cocaine, based on his relevant conduct. The sentencing guideline that applies to drug offenses is USSG § 2D1.1. It provides that a defendant's base offense level is set by the amount of drugs involved in the offense. At the time of Mr. Spencer's sentencing in 2007, the guidelines provided a base offense level 26 for offenses involving at least 5 grams but less than 20 grams of crack cocaine. Drug Quantity Table, USSG § 2D1.1 (c)(7) (2006). He received a three level reduction for acceptance of responsibility which brought his non-career offender total offense level down to 23. Mr. Spencer’s non-career offender criminal history category was IV. But a career offender criminal history category mandates a criminal history category of VI. See USSG § 4B 1.1(b). The maximum sentence allowed by statute in Mr. Spencer’s case was 20 years without any minimum mandatory sentence. See 21 U.S.C. § 841(b)(1)(C).

. Based on 5.5 grams of crack cocaine, Mr. Spencer's sentencing guideline base offense level would have been reduced from 26 to 24, see Drug Quantity Table, USSG § 2D 1.1 (c)(8) (2007). This in turn would have reduced his total offense level to 21, criminal history category IV.

. Mr. Spencer’s 5.5 grams of crack cocaine would have given him a base offense level 16 under Amendment 750. See USSG § 2D1.1(c)(12). Taking into account his acceptance of responsibility, his total offense level would have been 13, criminal history category IV, without the career offender designation.

. See, e.g., Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013); Sykes v. United States, - U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (considering whether Indiana felony offense of knowing or intentional vehicular flight from a law enforcement officer is a "violent felony” under the ACCA); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (considering whether New Mexico felony offense of driving under the influence of alcohol is a "violent felony” under the ACCA); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (considering whether Illinois failure-to-report felony offense is a "violent felony” under the ACCA); James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (whether Florida felony offense of attempted burglary is a "violent felony” under the ACCA’s elements prong).

. See, e.g., Mackey v. Warden, FCC Coleman-Medium, 739 F.3d 657 (11th Cir.2014); Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir.2013); Turner v. Warden, Coleman FCI (Medium), 709 F.3d 1328 (11th Cir.2013); Williams v. Warden, Fed. Bureau of Prisons, 713 F.3d 1332 (11th Cir.2013); Gilbert v. United States, 640 F.3d 1293 (11th Cir.2011) (en banc).